**In re Mary E. CALL, a/k/a Mary E. King f/d/b/a Mary's Uniform Shop, Debtor.**

**ARMY AVIATION CENTER FEDERAL CREDIT UNION, a corporation, Plaintiff,**

**v.**

**Mary E. CALL, a/k/a Mary E. King f/d/b/a Mary's Uniform Shop, Defendant.**

**Bankruptcy No. 80–0375.**

United States Bankruptcy Court, M. D. Alabama.

Jan. 29, 1981.

William G. House, Hardwick, House & Segrest, Dothan, Ala., for plaintiff.

Charles N. Reese, Daleville, Ala., for defendant.

## OPINION ON COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT

RODNEY R. STEELE, Bankruptcy Judge.

The Plaintiff on December 9, 1980, filed a Complaint to have this Court determine the dischargeability of debts owed by this Debtor and totalling at the time of bankruptcy $4,328.40.

It is alleged in the Complaint that the Plaintiff obtained two loans from the Credit Union, one on March 7, 1980, when she executed a promissory note of that date, payable to the Plaintiff for the sum of $3,164.40. She also obtained a loan of money on September 8, 1980, in the amount of $2,000.00.

The Complaint alleges that these monies were obtained by false pretense or false representation or by actual fraud, in this that the financial statements (Exhibits 1 and 2 for Plaintiff) executed by the Defendant in connection with her application for the loans of March 7, and September 8, 1980, were false, were known to be false, and were made to induce this Plaintiff to loan the money and that the Plaintiff did in fact loan the money based upon the false statements. It is further alleged that the last loan made on September 8, 1980, but actually paid out to the Defendant on September 29, 1980, was actually fraudulent in that the Defendant did on the very next day, that is, September 30, 1980, file her petition in straight bankruptcy, this very proceeding in bankruptcy.

By a Summons and Notice of Trial entered on December 29, 1980, the Complaint was set to be heard on January 14, 1981, at Dothan, Alabama. Notice was supplied to the Debtor and her attorney, to the Trustee, and to the Plaintiff's attorney.

At the appointed time and place the Complaint was called in accordance with the notice. Present was the attorney for the Plaintiff and representatives of the Plaintiff, the Defendant and her attorney.

Testimony was taken from a representative of the Plaintiff, and from the Defendant.

The facts may be summarized as follows. The Defendant in November, 1978, returned from the Canal Zone where she had been employed by a branch of the military. She established residence in Dale County on or near Fort Rucker, Alabama, and went to work for a Mrs. Clevinger who owned the uniform shop concession in the Army PX on Fort Rucker. At the same time she went to the Plaintiff's local office to establish credit and borrowed money in November of 1978 in the amount of $500.00 to establish this credit.

In January or February of 1980, the Defendant had decided to buy Mrs. Clevinger's uniform shop and to assume the concessionaire's agreement with the Army and Air Force Exchange Service in the PX at Fort Rucker. Mrs. Clevinger had agreed to sell the uniform shop and the Air Force Exchange had agreed to let Defendant assume the concession, the commission on which to the Exchange Service was 10.5 percent of sales.

The Defendant went to the Plaintiff and filled out an application for loan in which she was required to give a financial statement. She did so on about March 7, 1980, and listed only four debts, Commercial Credit Corporation, the Credit Union, General Electric Credit Corporation, and Real Estate Financing.

On that date she was loaned $2,650.00 with which to purchase Mrs. Clevinger's interest and begin her business.

At that time, from the testimony given and from the allegations of the Complaint she had one or two debts which she did owe at that time which she did not list in the financial statement, namely a debt to Danley Furniture Company incurred in September 1979 for $531.46 and a debt to Leon's of Dothan made in January 1979 for $507.00.

The money was used by Defendant for the purpose of buying Mrs. Clevinger's interest and assuming the concession.

Later, in July or August of 1980, Defendant's concession business was not doing well and she concluded that she needed to emphasize the rental uniform business rather than the sale of uniforms. She got the approval of the Exchange Service, and went back to Plaintiff to arrange for an additional loan to buy rental uniforms. On September 8, 1980, she filled out another loan application and listed General Electric Credit Corporation, the Federal Credit Union, Commercial Credit Corporation and Real Estate Financing as debts owed at that time.

She received a loan of $2,000.00 and a check was drawn payable to her and delivered to her at that time in that amount.

It appears however from the listing in her schedule of debts in bankruptcy that by that time she had incurred debts in addition to the personal ones which she owed in March, (the additional debts incurred between March and September of 1980) to William Iselin and Company in April of 1980 for $636.95, to the East Emblem and Insignia Company in April of 1980 for $1,647.92, to Super Trooper, Inc. in April 1980 for $1,747.95, to Gulf Coast Area Exchange in August of 1980 for $1,051.19, to Veda Clevinger in August 1980 for $700.00, to Davis Clothing Company in August of 1980 for $1,593.50, and to Airborne Freight in July 1980 for $455.00.

These Debts she did not list on her application for the loan made on September 8, 1980.

She called the Plaintiff's office on September 29, 1980, or a day or two prior to that time, and advised the loan officer Mr. Blair that one of the collecting banks had advised her that the check was improperly endorsed and although it was mailed back to her for proper endorsement, it had not been received. It had apparently been lost in the mails.

She requested the issuance of another check in the amount of $2,000.00. Blair stopped payment on the first check and issued another check in the amount of $2,000.00 which was delivered to Mrs. Call at Plaintiff's office on September 29, 1980.

On the same day she endorsed the check and used the funds to pay suppliers, including the two major suppliers who had provided rental uniforms.

Mrs. Call further testified that in the interim between September 8, 1980, and September 29, 1980, the price of the uniforms which she ordered for rental had gone up and that the PX had made demand upon her for immediate payment of its commission, in the amount of 10.5 percent of her sales, which was in arrears for the month of September.

She did not have these funds to pay the commission and to pay for the uniforms which had been ordered.

On September 22, 1980, she had visited her attorney Mr. Reese to discuss her financial condition. She testified at the hearing on January 14, that she had visited Mr. Reese late in the afternoon on September 29, after she had received the check for $2,000.00 from Plaintiff. But the evidence supports a finding that she visited him on September 22, 1980, and that she returned on September 29, 1980, to his office to sign a petition in bankruptcy.

The petition in bankruptcy was filed on September 30, 1980, at Montgomery.

The Complaint alleges that the Plaintiff made a materially false financial statement on March 7, 1980, and again on September 8, 1980, when she failed to list ten separate debts totalling $9,669.97. Mr. Blair for the Plaintiff testified that had he known of these debts he would not have made these loans.

We conclude that the Plaintiff has not proved that the Defendant made a materially false statement in writing either on March 7, or September 8, 1980, which induced Plaintiff to lend money to the Defendant on those two dates. But the actions of the Defendant on September 29, 1980, in inducing the Plaintiff to issue a new check in the amount of $2,000.00, when she knew that she was going into bankruptcy, is a false pretense or false representation or actual fraud which induced the loss suffered by this Plaintiff, and that

**70**

$2,000.00 ought not to be discharged in bankruptcy.

■ It does not appear that the written financial statement made on March 7, 1980, was materially false. Eight of the ten debts which are alleged in the Complaint to have been omitted from the statement of March 7, 1980, are according to that pleading debts which were made in April of 1980 or thereafter. They would not have then been debts which could have been listed on the March 7, statement.

■ But we are not satisfied that the Credit Union made any estimation or determination of the Defendant's financial condition when they loaned money on both occasions. Although there are some guidelines used by the Credit Union in determining when they will loan money, it does not appear from Mr. Blair's testimony that such guidelines were ever used in deciding whether to lend the sums of money which were loaned on March 7, and September 8, 1980. See *Consolidated Plan of Connecticut Inc. v. Cross*, 4 Conn.Cir. 641, 239 A.2d 51 (1967). Cf. *Swint v. Robins Federal Credit Union*, CA 5, 1969, 415 F.2d 179.

Moreover it appears that the loans made on these days were made as personal loans, and that although the Plaintiff knew that Defendant was operating a business and that the money was for a business purpose, they took no security, and apparently relied entirely upon the personal credit-worthiness of this Defendant.

■ But when Mrs. Call after having visited her attorney on September 22, 1980, and settled upon the filing of a bankruptcy petition, called the Plaintiff on September 29, and induced the Plaintiff to issue a new check in the amount of $2,000.00, to replace that check issued in that amount on September 8, 1980, and knew at that time that she would be unable to repay that debt and would on that day or the next day file a bankruptcy petition, we think it is clearly an artifice, trick or device which had the purpose and effect of cheating the Plaintiff out of $2,000.00. We do not think it significant that she did not think of her actions in those terms.

Such behavior has in several instances been denominated false pretense or false representation or actual fraud. Thus the "symbolic" use of credit cards on the eve of bankruptcy is a fraud on the card issuer. *In re Black*, D.C., 373 F.Supp. 105, 1974; *In re Boydston*, 5th Cir., 520 F.2d 1098, 1975. A misrepresentation of an intention to repay may establish the requisite intent to deceive. *Matter of Ratajczak*, Bkrtcy., 5 B.R. 583, 586; *In re Schlickman*, Bkrtcy., 6 B.R. 281, 282.

An appropriate Order will enter.