In the Matter of Joseph A. D'AMICO, Bankrupt.

LINCOLN FIRST BANK, N. A., Successor in Interest to Lincoln First Bank of Rochester, Plaintiff,

v.

Joseph A. D'AMICO, Defendant.

Bankruptcy No. 79–1085.

United States Bankruptcy Court, W. D. New York.

Nov. 7, 1979.

Nixon, Hargrave, Devans & Doyle, by D. Bruce Kratz, Rochester, N.Y., for plaintiff.

Joseph A. D'Amico, pro se.

## MEMORANDUM AND DECISION

EDWARD D. HAYES, Bankruptcy Judge.

The bankrupt filed his petition on April 24, 1979. Within the time allotted, the plaintiff herein filed a complaint seeking to have the charges made against their company on a credit card, within three months of bankruptcy, declared nondischargeable. No answer was filed by the defendant, who appeared pro se, at the pre-trial hearings scheduled by the Court. He was advised at that time to get an attorney to represent him and a day certain was set for trial. At the trial, he appeared without an attorney and wanted an adjournment to get one. No adjournment was granted to him.

At the trial, it appears .that in the three months immediately preceding the filing of the petition in bankruptcy, the defendant bankrupt herein charged some $3,383.78 on the BankameriCard issued by the plaintiff. The credit limit which the plaintiff had agreed to give the defendant was $500. He had already exceeded that amount at the time he started the spending spree. The bank in November, 1978, had refused to increase the bankrupt's line of credit. Pickup on his card for nonpayment was ordered in December, 1978. The bankrupt, by making his charges less than $100, was able to charge the foregoing sums without the merchant checking back with the credit card company.

The bankrupt is a construction worker and normally works only during the summer season. At the time the charges were made, the bankrupt was unemployed living on unemployment insurance of $125 a week. His expenses consisted of rent of $165 and child support of $240. This left him approximately $135 a month for all other living expenses. Many of the charges on the credit card were made while he took a vacation in Florida. However, before he went back to work, (April, 1979) he filed his petition in bankruptcy.

Section 17a2 provides in part as follows:

"A discharge in bankruptcy shall release a bankrupt from all of his provable debts, whether allowable in full or in part, except such as . . . (2) are liabilities for obtaining money or property by false pretenses or false representations, . ."

The United States District Court in the Western District of Oklahoma confirming the opinion of Judge Kline said in *In re: Alexander*, (CCH 64,385):

"However the frivolous manner in which he handled his credit cards since December 1, indicated that the debtor never intended to pay the $2,231.24 in debts he proceeded to incur. The purchase of goods with no present purpose to pay for them, and in contemplation of bankruptcy, amounts to entering into debt on false pretenses which is nondischargeable under the Bankruptcy Act."

In *In re: Engstrom*, (CCH 64,716) the United States District Court in the Southern District of Iowa said:

"The elements of the fraud of deceit were established by clear and convincing evidence. . . . The representation was false because the bankrupt knew at the time he could not pay for the merchandise under a revolving charge account he had with the department store. Each of the purchases was less than $25, the amount beneath which no credit check was made by sales clerks. By transferring merchandise to the bankrupt in a series of small credit sales, the creditor, having no additional knowledge, necessarily relied upon the implied promise to pay. The circumstances surrounding the purchases showed an intent to deceive on the part of the bankrupt. His department store account had been delinquent for some time and he was aware of this fact. Thirty-eight purchases were made, all of which avoided a credit check."

In *In re: Black*, (CCH 65,297) the United States District Court, Eastern District of Wisconsin says:

"Credit card purchases subsequent to a debtor's intent to file bankruptcy papers constitutes fraud under Section 17a2 of the Bankruptcy Act. A bankrupt couple had conducted a shopping spree after they had authorized an attorney to prepare their bankruptcy papers."

Collier on Bankruptcy, Volume 1A states at page 1639:

"Thus a purchase of goods on credit by a bankrupt who does not intend to pay therefore, constitutes a false representation."

In *Marine Midland Bank v. Legett*, this Court in an unreported opinion dated May 23, 1977 said:

"After reviewing the facts, and listening to the bankrupt's explanation, it is clear to me that he and his friend and/or 'agent', Mr. Kelly, went on a shopping spree just prior to the bankrupt filing his petition in bankruptcy with the intention of obtaining goods which he could keep after the bankruptcy without paying for them. This is the type of conduct that Section 17a2 of the Bankruptcy Act was enacted to prohibit."

Here within three months of bankruptcy we have a bankrupt who has already exceeded the credit limit on his card deliberately charging goods on the credit card, knowing that the bank does not wish to extend him additional credit. He makes his purchases so that the merchant does not check with the credit card company. He does this while he is unemployed and not receiving sufficient monies to live upon and meet his obligations which must be met. After living it up in Florida on the credit card, he returns to Rochester and promptly files a petition in bankruptcy. Clearly at the time he charged the goods he had no intention to pay for them. Therefore, I find that the bankrupt has obtained $3,383.78 from the plaintiff under false pretenses and therefore, the plaintiff may have judgment against the defendant in the amount of $3,383.78 plus interest, attorneys fees and the cost of this proceeding, and it is so ordered.

This Memorandum and Decision shall constitute Findings of Fact and Conclusions of Law in accordance with Rule 752 of the Bankruptcy Procedures.