In re Michael Lee ASHLEY, Debtor.

Frank THOMAS, Plaintiff,

v.

Michael Lee ASHLEY and Ora Dixson, Defendants.

Bankruptcy No. 1–80–00216.
Adv. No. 1–80–0087.

United States Bankruptcy Court,
E. D. Tennessee.

July 18, 1980.

Jerry Foster, Chattanooga, Tenn., for plaintiff.

Mark T. Young, Chattanooga, Tenn., for defendant, Michael Lee Ashley.

William B. Petty, Jr., Chattanooga, Tenn., for defendant, Ora Dixson.

## MEMORANDUM

RALPH H. KELLEY, Bankruptcy Judge.

This cause came on to be heard upon the complaint of Frank Thomas against Michael Lee Ashley and Ora Dixson praying:

(1) That the Court, upon a hearing, determine that the debt owed by the bankrupt to Frank Thomas . . . be found to be nondischargeable.

(2) That the lien asserted by Ora Dixson be held invalid.

(3) That Frank Thomas have a lien upon said vehicle by reason of . . . judgment and execution.

Both defendants filed an answer denying the allegations of the complaint and Ora Dixson filed a cross-complaint against Frank Thomas and Flossie Weill, trustee, praying:

(1) That her security interest in the 1969 Camaro be confirmed and that she be given possession of said vehicle;

(2) That the Plaintiff/Cross-Defendant, Frank Thomas, be ordered to pay her monetary damages to compensate her for any decrease in value to the vehicle resulting from waste, depletion, or the stripping of said vehicle while it has been in the possession of Frank Thomas or his agents;

(3) That the Plaintiff/Cross-Defendant, Frank Thomas, be ordered to pay her damages in the amount of her costs, including attorney fees, resulting from his frivolous and completely unfounded lawsuit;

(4) That Flossie Weill, Trustee, Defendant, be ordered to take immediate possession of the vehicle and remove it to a place of safe keeping and that, in conjunction with such removal, the contents be inventoried and the vehicle examined by the Debtor and your Defendant/Cross-Plaintiff, Ora Dixson, or their agents, so that the exact damages done to said vehicle may be ascertained;

(5) That, if the Plaintiff/Cross-Defendant, Frank Thomas, fails to pay any damages assessed against him in this proceeding, the Defendant/Cross-Plaintiff, Ora Dixson, be allowed to recover said sums from the bond posted by the Trustee.

At an earlier hearing the court found that Ora Dixson had a perfected security interest in a 1969 Chevrolet Camaro automobile, Vehicle Identification No. 124379N566465, and was entitled to immediate possession of the vehicle.

On May 23, 1980 a non-suit was entered as follows:

NOW COMES your Cross-Plaintiff, Ora Dixson, and herewith nonsuits her action against Flossie Weill, Trustee, evidence having been supplied your Cross-Plaintiff that all damages incurred by your Cross-Plaintiff were sustained before Flossie Weill qualified as Trustee.

The issues before the court are (1) whether the debt owing to Frank Thomas is dischargeable and (2) whether Frank Thomas is liable to Ora Dixson.

On December 2, 1979, Frank Thomas obtained judgment against the debtor which ordered:

(1) That the sale of the boat described in the complaint by the defendant to the plaintiff, be and the same is hereby rescinded and for naught held and plaintiff is awarded judgment against the defendant for the sum of Four Thousand ($4,000.00) Dollars, being the purchase price of the boat and accessories. Upon payment of this sum and all other sums herein decreed, all right, title and interest and possession of the boat shall be awarded defendant.

(2) Plaintiff is awarded the sum of One Thousand ($1,000.00) Dollars as additional damages by reason of such sale.

The judgment also contained the following language:

The Court is further of the opinion and accordingly finds that the defendant was guilty of misrepresentation in the sale of the craft to the plaintiff in that the same was defective and known unto the defendant to be unfit for ordinary purposes for which a craft of this nature would be intended. *The Court is further of the opinion and accordingly finds that the defendant was guilty of breach of warranties provided by Tennessee Code Annotated Section 47–2–313, Section 47–2–314 and Section 47–2–315 and accordingly that the application of the plaintiff to rescind the sale should be allowed.*

The Chancery Court pleadings indicate plaintiff's reliance upon the Uniform Commercial Code. The state court in its default judgment did not find debtor guilty of fraud involving moral turpitude and intentional wrong.

■ The Bankruptcy Court may look behind a judgment to determine if the basis for liability is fraud and thus whether the debt is dischargeable. The Court of Appeals in *In re Johnson*, 323 F.2d 574 (3rd Cir. 1963) at page 578 states:

"Since the Bankruptcy Act is specific as to non-dischargeable debts, it was permissible, even necessary in the circumstances, for the Bankruptcy Court to inquire into the nature of the liability ·which had been reduced to judgment in order to determine whether it falls within the Act, and further to inquire into the circumstances surrounding the creation of the debt or the entry of the judgment. *Poolman v. Poolman* [289 F.2d 332 (8th Cir. 1961)]; *Personal Industrial Loan Corporation v. Forgay* [240 F.2d 18 (10th Cir. 1956)]; *State Finance Company v. Morrow* [216 F.2d 676 (10th Cir. 1954)]; *Margolis v. Nazareth Fairgrounds* [249 F.2d 221 (2nd Cir. 1957)]; *White v. Public Loan Corporation* [247 F.2d 601 (8th Cir. 1957)]."

The Supreme Court of the United States on June 4, 1979, said:

. . . we hold that the bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of respondent's debt. Adopting the rule respondent urges would take § 17 issues out of bankruptcy courts well-suited to adjudicate them, and force those issues onto state courts concerned with other matters . . . *Brown v. Felsen*, 5 Bankr.Ct.Dec. 226.

The court has allowed two hearings so that all proof could be heard.

At the first hearing Frank Thomas testified that he bought a boat, motor, and trailer from the debtor for $4,000.00. It had been advertised in the newspaper.

On one occasion he came by debtor's residence and examined the boat. On another day Mr. Thomas and the debtor took the boat out on Chickamauga Lake. They were out for two or three hours and they fished some.

Mr. Thomas noticed the transom was damaged and felt at the price he was paying he could afford to have it repaired.

After purchasing the boat he noticed it leaked. He took the boat to the factory and had the transom fixed for $350.00. After this repair the factory people told Mr. Thomas it would cost an additional $1900.00 to have the hull repaired.

In response to questions from the court Mr. Thomas estimated the motor was worth $2,500.00 or $2,600.00 and the trailer was worth $800.00 to $1,000.00. He had no complaint about the motor or trailer.

He testified the boat would have been worth $2,500.00 if it had not have leaked. He further testified that when he was out on the lake in the boat with the debtor that he did not notice that it leaked.

On cross-examination Mr. Thomas was asked if debtor's father showed him where patching had been used to repair the bottom of the boat. He answered that he was told the patching was for stress cracks.

Mr. Ashley, the debtor, testified that he bought the boat used in May, 1978. It leaked some but the marina from whom

debtor purchased the boat would not make repairs saying that it didn't warrant used boats. The debtor said he told Mr. Thomas of his problem. He says Mr. Thomas saw the "spot" on the bottom of the boat which had to be patched.

The debtor testified he used the boat about three times per week, and from time to time patched the "spot" again if it started leaking.

Mr. Ashley said that he and his father both pointed out the patched place and Mr. Thomas admits that he saw the patch. Apparently, it is Mr. Thomas' position that he was not told of the leak. The debtor says Thomas was advised of the problem and saw the patch.

Albert Ashley, Jr., father of the debtor, testified, that Thomas got under the boat with him and looked at the spot. He testified that Mr. Thomas said, in effect, that he could afford to put a new bottom on the boat considering the price he was paying. Mr. Ashley testified that his son never wrecked the boat.

Maxine Ashley, mother of the debtor, testified that she saw Mr. Thomas crawl under the boat with her husband.

At the second hearing Ronald S. Coleman testified that he accompanied Thomas to debtor's residence where Thomas looked at the boat. The witness didn't remember whether debtor was present. He recalled that Thomas looked under the boat with debtor's father. He testified that debtor's father said his boy would not sell a bad boat.

The next witness was Larry Lovelady who testified that the debtor told him he had hit a stump and damaged the transom. He had done some repairs on the boat but could not repair the transom.

Mrs. Dixson testified that it cost $359.00 to replace tires and wheels on the automobile which Mr. Thomas had attached. At the first hearing Mr. Roberts testified that a deputy sheriff brought the car to his garage for storage. He further testified that a thief had cut a hole in his fence and stole the tires and wheels.

## CONCLUSIONS OF LAW

All claims are dischargeable in bankruptcy, except those specifically excepted in 11 U.S.C. § 523. See: Collier on Bankruptcy (15th ed.), Vol. 3, § 523.

The present controversy involves Section 523(a)(2) which excepts from discharge debts

". . . for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition . . ."

Section 523(a)(2) is derived, with slight modification, from section 17a(2) of the Bankruptcy Act.

There is no indication that "false pretenses" or "false representation" has any different meaning under the Code than the Act.

The Supreme Court of the United States in the case of *Brown v. Felsen*, 5 Bankr.Ct. Dec. 226 (1979) noted that the provisions of § 523 of the new code concerning what debts are dischargeable in bankruptcy are substantially similar to the provisions which were found in Section 17 of the prior Act. (Collier on Bankruptcy, 15th ed., 3:523.02; see also Collier on Bankruptcy, 14th ed., 1A:17.16[4]).

Under the Bankruptcy Act it was clear that exceptions were confined "to those plainly expressed" in § 17. Collier on Bankruptcy (14th ed.), Vol. 1, § 17.02, at p. 158.

The construction of the Bankruptcy Act is clear:

"This [Supreme] Court on numerous occasions has stated that '[o]ne of the primary purposes of the bankruptcy act' is to give debtors 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt.' *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 [54 S.Ct. 695, 699, 78 L.Ed. 1230] (1934). Accord, e. g., *Harris v. Zion's Savings Bank & Trust Co.*, 317 U.S. 447, 451 [63 S.Ct. 354, 357, 87

L.Ed. 390] (1943); *Stellwagen v. Clum,* 245 U.S. 605, 617 [38 S.Ct. 215, 218, 62 L.Ed. 507] (1918); *Williams v. United States Fidelity & Guaranty Co.,* 236 U.S. 549, 554–555 [35 S.Ct. 289, 290, 59 L.Ed. 713] (1915)." *Perez v. Campbell,* 400 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971).

With reference to liabilities for obtaining money by false pretenses or false representations:

"It must further affirmatively appear that such representations, were knowingly and fraudulently made, and that they were relied upon by the other party." Collier, supra, at pp. 1634 and 1635.

It is said:

". . . fraud implied in law, which may exist without imputation of bad faith or immorality, is insufficient." 1 Collier on Bankruptcy, § 17.16 at p. 1634.

"The frauds included in the portion of clause (2) under discussion are those which in fact involve moral turpitude or intentional wrong." Collier, supra, at p. 1634.

"Section 17a(2) contemplates actual fraud that bankrupt knowingly made false representations, that such representations were made with the intent of defrauding the creditor or were made with such reckless disregard for the truth as to be tantamount to a wilful misrepresentation, and that the creditor relied upon and was misled by the false pretense or representation." 8 Remington on Bankruptcy, 1978 Supplement, § 3327.1, at p. 93.

Collier, (15th ed.), supra, in § 523.08 comments on the meaning of 11 U.S.C. § 523(a)(2)(A);

[4]—What Constitutes False Pretenses or Representations.

Not all frauds are included within the exception of section 523(a)(2)(A), but only those which are involved in the obtaining of money, property or services by "false pretenses or false representations." Actual fraud, as distinguished from false pretenses or false representations will be discussed in ¶ 523.08[5] *infra.* The frauds included in the portion of section 523(a)(2)(A) under discussion are those which in fact involves moral turpitude or intentional wrong; fraud implied in law which may exist without imputation of bad faith or immorality, is insufficient. It must further affirmatively appear that such representations were knowingly and fraudulently made, and that were relied upon by the other party.

■ In addition to proving that debtor made a false representation upon which he relied the plaintiff must prove that the reliance was reasonable. The requirement of reasonableness is implicit under § 523(a)(2)(A) as it was under § 17a(2) of the prior Act. *In re Arden,* 2 BCD 204 (D.R.I. 1975). Tennessee case law also recognizes the requirement that reliance be reasonable. *Edwards v. Travelers Insurance,* 563 F.2d 105, 113 (6th Cir. 1977), ". . . (P)laintiff must rely reasonably on the misrepresented material fact."

■ The burden of proof is upon the plaintiff to prove each element as provided under Rule 407, Rules of Bankruptcy Procedure, which states:

"At the trial on a complaint objecting to a discharge, the plaintiff has the burden of proving the facts essential to his objection."

■ The bankruptcy code requires that plaintiff prove actual fraud. It must be proved by clear, cogent and convincing evidence. Fraud is never presumed. It has always been fundamental that the conduct of mankind is presumed to be upright and those who allege to the contrary have the burden of strict proof as to every essential allegation. See *Sweet v. Ritter Finance Company,* 263 F.Supp. 540 (D.C.Va.1967).

## DISCUSSION

In the present case the debtor obtained $4,000.00 for a boat, motor and trailer which he sold to the plaintiff. The plaintiff admits the motor is worth $2,500.00 and the trailer is worth $800.00. This amounts to $3,300.00. The boat, if undamaged, would have been worth $2,500.00 according to plaintiff's testimony. The boat, however, is

damaged and it will take $1,900.00 to repair it.

Using creditor's figures, the boat would appear to be worth only $600.00. When this is added to the $3,300.00 value of the motor and trailer, the total is $3,900.00.

It appears that creditor's damages, in tort, if any, amount to $100.00.

■ After carefully reviewing the evidence and the entire record the court concludes that debtor made no false representation upon which plaintiff reasonably relied.

The plaintiff simply thought he was getting a bargain. Neither plaintiff nor debtor had any idea that the factory would charge $1,900.00 to repair the boat.

Plaintiff was upset over the repair cost and sued the debtor who had been off from work many weeks with a broken leg. Debtor testified that he had no money to defend the suit. The plaintiff took a default judgment.

■ The state court made no findings of fact that debtor was guilty of actionable fraud. Indeed, had the suit been defended the state court may have found no liability. When a buyer before entering a contract has examined the goods, there is no implied warranty with regard to defects which an examination ought in the circumstances to have revealed to him. T.C.A. 47–2–316(3)(b).

The cross-complaint against Mr. Thomas will be dismissed and Mrs. Dixson may proceed against the owner of the garage in state court.

The complaint against the debtor will be denied and the indebtedness to plaintiff will be discharged.

This memorandum constitutes findings of fact and conclusions of law. Rule 752, Bankruptcy Rules.