In the Matter of Holger P.
RATAJCZAK, Debtor.

MAAS BROTHERS, INC., Plaintiff,

v.

Holger P. RATAJCZAK, Defendant.

Bankruptcy No. 80–126 C.

United States Bankruptcy Court,
M. D. Florida,
Tampa Division.

Aug. 6, 1980.

John R. Shuman, Clearwater, Fla., for plaintiff.

John Thomas Schrotel, Tampa, Fla., for defendant.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION DETERMINING DISCHARGEABILITY

ALEXANDER L. PASKAY, Chief Bankruptcy Judge.

THIS IS a contested discharge proceeding and the matter under consideration is the dischargeability, vel non, of a debt admittedly owed to the Plaintiff, Maas Brothers, Inc. by Holger P. Ratajczak, the Defendant involved in the above–captioned adversary proceeding. The complaint seeks a determination that the Defendant is indebted to the Plaintiff in the amount of $1,919.72 and that this indebtedness was created by the Defendant through false pretenses in that he never intended to pay for the merchandise or other things of value obtained by him from the Plaintiff. Accordingly, so contends the Plaintiff, the indebtedness shall be declared to be outside of the protective provisions of the general bankruptcy discharge by virtue of § 523a(2)(A), 11 U.S.C. § 523a(2)(A) of the Bankruptcy Code.

The record as established at the final evidentiary hearing reveals the following:

The Defendant is a college graduate and is currently working on his Masters Degree in education. In the early 1970's, the Defendant established a charge account with the Plaintiff and during the entire period of time, up to the time he filed bankruptcy, maintained his account in good standing

and there is no serious dispute that there were no excessive charges on his charge account until sometime in late October of 1979.

The record further reveals that the Defendant, after having been discharged from the Army, had various and sundry employments, none of them of any great consequence, and primarily attended school on a GI Bill and sustained himself and his wife basically on the benefits he received from the Government either in the form of a GI Bill, tuition assistance and a small monthly disability payment plus a federally guaranteed student loan. The Defendant's wife, while working in the earlier years as a clerk, did not work at all during the year 1979 due to pregnancy. In September of 1979, she gave birth to a child and although it appears that she intended to go back to work shortly thereafter, she suffered post–partum depression which required treatment by a psychiatrist and extensive hospitalization subsequent to the Defendant filing his petition under Chapter 7.

The record further indicates that the Defendant maintained two accounts with the Plaintiff, Account No. 738727–7 F and Account No. 739660–0 D. It appears, however, this later account was satisfied and is not involved in the present controversy. Account No. 738727–7 F carried a modest monthly balance up to October 20th. Thus, the September statement indicates an ending balance of $326.16 and the October 20th statement had an ending balance of $571.80. However, the activity on this account markedly increased between October 20th and January 12th, reflecting purchases in excess of a thousand dollars, out of which $900 represents not actual purchases, but purchases of gift certificates on credit, which appear to have been used by the Defendant as a means to obtain not only merchandise but, at least at times, cash representing the difference between the face amount of the certificates and an actual purchase. The record further reveals that these certificates were not in fact purchased to be given to friends or relatives as gifts at all, but were used by the Defendant and his wife.

The record further reveals that on January 30th the Defendant consulted an attorney for the first time for the purpose of inquiring about the possibility of filing bankruptcy and their voluntary petition was, in fact, filed on the following day, February 1, 1980. The Statement of Affairs filed by the Defendant reveals that the total income during the year of 1979 was $2,000 and the year of 1978 was $1,000. It further appears, as noted earlier, that the wife had no earnings during the year of 1979 and the Schedule of Liabilities indicates a total of secured indebtedness in the amount of $1,300, which in addition to a 1979 Chevrolet Camaro, includes hard goods purchased on credit from the Plaintiff, the balance of which is not involved in this controversy, and a small loan which is secured by household goods. However, the schedules also indicate a total unsecured indebtedness of $6,656, among which there is a liability to J.C. Penney in the amount of $4,500 and a balance to Burdines, another department store, in the amount of $1,400. The Defendant obtained his position with the County of Hillsborough as a clerk typist in September of 1979 and had a disposable income from that employment of approximately $502 per month. At that time, the Defendant no longer had the benefit of the government education assistance and the only funds he received from the government were from a small disability pension mentioned earlier. In spite of a large indebtedness, it appears that until January of 1980, the Defendant somehow more or less met his obligations and did not appear to have any pressure from creditors either by way of threat of a lawsuit or actual suits filed.

This is basically the background of this controversy upon which the Plaintiff's contention is based that the balance stated earlier, that is the sum of $1,919, should be declared to be non–dischargeable because it was obtained by fraud in that the Defendant knew that he would not be able to meet his obligations at the time he incurred these liabilities. This charge is based upon § 523(a)(2)(A) of the Code which provides in pertinent part as follows:

(a) "A discharge . . . . does not discharge an individual debtor from any debt–. . . .

(2) for obtaining money, property, services, or an extension, renewal, or refinance of credit, by–

(A) false pretenses, a false representation . . . ."

§ 523(a)(2)(A) is derived, with slight modifications, from § 17a(2) of the Bankruptcy Act of 1898 and the case law as developed under the Act pertaining to the obtaining of property on the basis of false pretenses. and false representations is equally applicable to such a charge under the Code.

In order to sustain a claim of non–dischargeability under § 523(a)(2)(A), the Plaintiff must establish (1) that the Defendant made a materially false representation; (2) that the representation was made with intent to defraud; and (3) that the Plaintiff relied on the false representation. Purchase of merchandise by use of a credit card is an implied representation to the merchant and to the issuer of the card, that the buyer has the means and the intention to pay for the purchase. Accordingly, when one purchases goods on credit and either knows that he is unable to comply with the payment requirements of the contract or when it appears from the evidence that he had no intention to pay for them, he obtains the goods through false pretenses which constitutes a form of fraud on the creditor who relied upon the representation by virtue of the extension of credit. The liability created by such a credit purchase is, therefore, rendered non–dischargeable. *In re Boydston*, 520 F.2d 1098 (5th Cir. 1975); *In re Black*, 373 F.Supp. 105 (E.D.Wis.1974). The case of *In re Wood*, 571 F.2d 284 (5th Cir. 1978), also focused on the intent of the purchaser in finding a credit card debt dischargeable. The Court noted that Wood had been able to meet his debts as they came due, that he had not contemplated bankruptcy at the time the charges were incurred and that a factor in his later inability to pay his debts was additional medical expenses. On these facts, the Court determined that there was no fraudulent intent on the part of the bankrupt to render the debt non–dischargeable.

Applying these principles to the relevant facts as established by this record, this Court is satisfied that the Defendant made the purchases subsequent to October 19, 1979 with full knowledge that he would not be able to pay for them. At the time the credit transactions in question took place, the Defendant's financial resources were limited. The Defendant was employed, but was only taking home approximately $500 a month. His wife was not working and had just given birth to a child. Though extensive medical expenses were incurred due to his wife's hospitalization, this hospitalization did not occur until after the Defendant filed his petition in bankruptcy and it, therefore, was not this unexpected event which caused him to seek relief in this Court. Within an approximate two month span, the Defendant made approximately $1,000 worth of purchases most of which were gift certificates which were used not as gifts, but by the Defendant and his wife to obtain merchandise for themselves and the cash differential between the purchase and the face amount of the certificate. Although the record reveals that the Defendant had utilized this same method of purchasing in the past, the number of gift certificates purchased greatly increased after October. These transactions demonstrate a gross abuse of the credit facility extended to him for under such strained financial circumstances, the Defendant could not have believed that he would be able to pay for these purchases. The Defendant's argument that the purchases increased drastically during the period in question only due to Christmas does not negate the fact that he was aware of his inability to repay the debt incurred.

Having concluded that the Defendant made the purchases subsequent to October 19, 1979, with full knowledge that he would not be able to pay for them, this Court, therefore, finds that the portion of the obligation to the Plaintiff attributable to these purchases is a liability for obtaining money and property by false pretenses and should be excluded from the protection of the general bankruptcy discharge.

A separate final judgment will be entered in accordance with the foregoing.