**In the Matter of Delores BUFORD, Debtor.**

**Bankruptcy No. 81 B 11964.**

United States Bankruptcy Court, S.D. New York.

Dec. 7, 1982.

---

**10.** Although the DOE alleged that a long delay would prejudice it, it never explained how. *Cf.* notes 4 & 9 *supra.*

478

Silverblatt & Hamilton, New York City, for debtor; David Levine, New York City, of counsel.

Lee Kevin Deutsch, Hicksville, N.Y., for Manufacturers Hanover Trust.

BURTON R. LIFLAND, Bankruptcy Judge.

This matter is before the Court on an objection to the discharge of the debt of the debtor, Dolores Buford, owed to Manufac-

1. 11 U.S.C. § 523(a)(2)(A) (Supp. IV 1980).

turers Hanover Trust Company ("MHT"). MHT contends that the debtor's putative credit card abuse renders its claim against the debtor nondischargeable pursuant to 11 U.S.C. Section 523,[1] the statute governing specific debt dischargeability. The creditor apparently hoped to establish that mere use of a credit card when monthly repayment obligations exceed income *ipso facto* sustains non-dischargeability.

*Statement of Facts*

Plaintiff MHT is a diverse banking institution with substantial income derived from interest payments received from the extension of consumer credit and grant of consumer loans. In extending credit, MHT is the sole arbiter of whether the applicant is or is not creditworthy and determines where the credit limit should be set.

The following is a simplification of MHT's general treatment of credit card debt synthesized from the testimony. Once a credit card has been issued, the bank remits a monthly statement showing past charges, financing charges, and the minimum payment due. The credit card user is thereby obligated to make at least the minimum payment reflected on the statement. If an installment payment is missed, the obligor is required to pay the prior minimum balance the following month plus the current installment due. When an account is 60 days past due, the bank's supposed policy is to stop the grant of additional credit. *See* Transcript of Buford Discharge Hearing of May 25, 1982 ("Transcript") at 27.

The debtor filed her Chapter 7 petition for bankruptcy ("the Petition") on October 8, 1981 pursuant to Section 301 of the Bankruptcy Reform Act ("the Code").[2] Over the course of her credit relationship with MHT, debtor generally made some payment to MHT each month in a varying amount. Some of her payments equalled the so-called "minimum" payment required by MHT and some did not. *See* Trial Exhibits 2 and 3. Nevertheless, MHT at no time

2. 11 U.S.C. § 301 (Supp. IV 1980).

exercised its prerogative to revoke her credit or refuse further extension of credit although as of August 12, 1981, her Mastercard balance was more than 60 days past due. *See* testimony of MHT's representative, Frank Campbell, Transcript at 26–27, 48, 55. MHT did list debtor's credit available as none on her August 1981 Mastercard statement, but immediately made credit available once again as of her September 1981 statement after she made a payment *less* than the minimum payment required.

Furthermore, the debtor continued to incur new charges until September 1981. *See* Transcript at 62 and Trial Exhibits 2 and 3. At the time of the bankruptcy filing, the debtor was obligated to MHT on both her Master and Visa cards in the aggregate amount of $4,415.00.[3] MHT had extended a line of credit of $2,500 on each of her credit cards for a total credit line of $5,000. Transcript at 4.

As evidenced by debtor's testimony, demeanor, and the Petition, debtor is not financially sophisticated. At the time she filed her Petition, she was employed as a licensed practical nurse earning $19,000 in 1980 and $16,000 in 1979. *See* Petition, Statement of Financial Affairs.

Her petition also revealed credit card debt, exclusive of her debt to MHT, in the amount of $6,886.69 which is not the subject of any debt dischargeability proceeding. *See* Petition, Schedule A–3. MHT submitted evidence at trial from debtor's deposition that debtor's monthly expenses were $892.20. *See* Transcript at 10. Moreover, MHT's Trial Memorandum of Law further alleges that debtor incurred additional monthly living expenses of $1,417.50. *See* MHT's Memorandum of Law at 1–2. Thus, according to MHT, debtor's monthly expenses totalled $2,307.70 each month. At the time these debts were incurred, debtor was earning $277 per week on a net basis. It is, however, not clear as to whether or not debtor's income was derived from fixed salary, free lance contract labor or a combination thereof.[4]

Debtor's charges on her Master and Visa cards evidence a consistent pattern of credit extension on a modest level between March and September 1981. Debtor's monthly charges on her Visa card ranged from a low of $37.06 as detailed in her August 1981 statement to a high of $547.10 as reflected in her May 1981 statement. The May 1981 statement included a cash advance of $200. *See* Trial Exhibit 2. Similarly, debtor's monthly charges on her Mastercard statements reflect no new debt as of March 11, 1981 and a high of $440.77 as of May 11, 1981. *See* Trial Exhibit 3.

The kind and consistency of debtor's purchases and the level of activity in her account evidence that she did not go on a "shopping spree" or incur an inordinate amount of debt immediately prior to filing the Petition. In fact, in the two months immediately preceding the October 8, 1981 filing, or from August 13 to October 8, 1981, debtor charged $608.02 in purchases on both her Master and Visa cards. *See* Trial Exhibits 2 and 3. This $608.02 total debt figure is not inordinately disproportionate to the total of any other two month of combined Visa and Mastercard charges. *Id.* Furthermore, MHT has submitted no evidence demonstrating that any of debtor's purchases were luxury items rather than necessaries or that she was simultaneously incurring substantial other debt.

## II. *Issue Presented*

At issue is whether the debtor intended to deceive the creditor into believing that

---

3. *See* Transcript at 10. For the purpose of this opinion, the Court will treat debtor's obligations on both of these charge cards as one debt because they were incurred under similar circumstances.

4. *Id. See also* Transcript at 6. Neither party has submitted any evidence of any alternative or additional income sources for the debtor. Furthermore, many of the factual assertions contained in MHT's brief were based on pre-trial discovery which did not emerge as evidence in the trial due to plaintiffs selective use at trial of depositions. Therefore, the available record for determination of the debtor's intentions was severely curtailed. *See* Transcript at p. 6, where MHT offered into evidence only isolated excerpts from debtor's deposition subject to an eventual connection, which connection was never established.

she had the intention and ability to pay for the merchandise purchased on credit, or whether she knew or should have known that she would be unable to pay for such purchases. For the following reasons, it is this Court's decision that Mrs. Buford's debt to MHT does not fall within the Section 523(a)(2)(A) exception to discharge and that this debt will be discharged.

## III. *Discussion*

MHT argues that Section 523(a)(2)(A), which excepts from discharge any debt "for obtaining money, property, services, or an extension, renewal, or refinance of credit, by—(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition" controls this proceeding. MHT urges that by virtue of the debtor's use of her charge cards when she knew or should have known she could not repay the credit extended, she obtained credit and a cash advance by false pretenses or false representations. In her answer, debtor avers that she did not obtain such money or property by false pretense or false representation. Following the crucible of trial, this Court holds that the debtor's debt to MHT is properly dischargeable.

In analyzing Section 523(a)(2)(A) and whether it applies to Mrs. Buford's debt, this Court will consider the decisions rendered under Section 17(a)(2) of the former Bankruptcy Act[5], which is the correlative provision to Section 523(a)(2)(A) of the Code. The legislative history of this Code section states that it only slightly modifies Section 17(a)(2).[6] Furthermore, case law which arose under Section 17(a)(2) has been used by courts for guidance in interpreting Code Section 523(a)(2)(A). *See, e.g., In re Miller,* 5 B.R. 424, 2 C.B.C.2d 849 (Bkrtcy.

W.D.La.1980); *In re Ashley,* 5 B.R. 262, 2 C.B.C.2d 949, 6 B.C.D. 655 (Bkrtcy.E.D. Tenn.1980); *In re Green,* 5 B.R. 247, 2 C.B. C.2d 905 (Bkrtcy.N.D.Ga.1980); *In re Jones,* 3 B.R. 410, 1 C.B.C.2d 676, 6 B.C.D. 68 (Bkrtcy.W.D.Va.1980).

The basic rationale and policy behind the dischargeability provision of Section 17(a)(2) and the Act in general as put forth in case law was "to relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes". *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934) (quoting *Williams v. United States Fidelity & Guarantee Co.,* 236 U.S. 549, 554–55, 35 S.Ct. 289, 290, 59 L.Ed. 713 (1915)).

This same overriding policy rationale has been reiterated by the Supreme Court more recently in *Lines v. Frederick,* 400 U.S. 18, 19–20, 91 S.Ct. 113, 113–14, 27 L.Ed.2d 124 (1970) (per curiam). The Bankruptcy Court in *In re Huff,* 1 B.R. 354, 1 C.B.C.2d 171, [1978–1981 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 67,269 (Bankr.D.Utah 1979), has also echoed this policy declaring that in order to accomplish the goal of providing a fresh start, exceptions to discharge should be "strictly construed in favor of the bankrupt." 1 B.R. at 357, 1 C.B.C.2d at 173 (citing *Gleason v. Thaw,* 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915)).

■ Accordingly, it has become the well-established rule that the burden of proof in excepting a debt from discharge under Section 523(a)(2)(A) is on the petitioning creditor. *See* Rule 407, Rules of Bankruptcy Procedure[7]; *In re Neumann,* 13 B.R. 128

---

5. 11 U.S.C. § 35(a)(2) (1976) (repealed 1978).

6. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess. 364 (1977); S.Rep. No. 989, 95th Cong., 2nd Sess. 78 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787; *In re Banasiak,* 8 B.R. 171, 173, [1978–1981 Transfer Binder] Bkrtcy.L.Rep. (CCH) ¶ 67,767; *In re Ratajczak,* 5 B.R. 583, 586 (Bkrtcy.M.D.Fla.1980). The simple change in subsection (A) of Section 523(a)(2) is the addition of actual fraud.

7. Hereinafter, all rules cited refer to the rules contained in the Rules of Bankruptcy Procedure, promulgated by the Supreme Court pursuant to 28 U.S.C. § 2075 for the use under the former Bankruptcy Act of 1898, as amended, and applicable under the Bankruptcy Code to the extent not inconsistent. *See* 11 U.S.C. §§ 247, 402 and 405. Proposed Rule 4005 reiterates the substance of Bankruptcy Rule 407. Proposed Bankruptcy Rules (Prel. Draft 1982).

(Bkrtcy.E.D.Wis.1981); 1A Collier on Bankruptcy, ¶ 14.43 (14th ed. 1978).

Moreover, cases deciding the issue whether to allow an exception to discharge have required that the creditor established the elements of fraud by "clear and convincing" evidence. *See, e.g., In re Brown,* 419 F.Supp. 199, 202 (E.D.Va.1975); *In re Engstrom,* [1970–1973 Transfer Binder] Bankr. L.Rep. (CCH) ¶ 64,716 (S.D.Iowa 1979); *In re Lyon,* 8 B.R. 152, 154, 3 C.B.C.2d 644, 647, [1978–1981 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 67,750 (Bkrtcy.D.Maine 1981); *In re Huff,* 1 B.R. 354, 1 C.B.C.2d 171.

The prevailing case law also requires that for a debt to be held nondischargeable, the creditor must prove that all of the following was true at the time the property was obtained: "(1) the debtor obtained the property by means of representations which he knew were false or which were made with reckless disregard of their truthfulness; (2) the debtor had an intent to deceive, which may be inferred from the knowing or reckless misrepresentation made to induce another to transfer property to the debtor; and (3) the creditor actually and reasonably relied on the misrepresentation." *In re Schnore,* 13 B.R. 249, 252 (Bkrtcy.W.D.Wis. 1981); *Accord, In re Ciavarelli,* 16 B.R. 369, 370 (Bkrtcy.E.D.Pa.1982); *In re Poteet,* 12 B.R. 565, 567 (Bkrtcy.N.D.Tex.1981); *In re Pitts,* 10 B.R. 557, 559 (Bkrtcy.M.D.Fla. 1981); *In re Ratajczak,* 5 B.R. 583, 586, [1978–1981 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 67,672 (Bkrtcy.M.D.Fla.1980); *See also In re Houtman,* 568 F.2d 651 (9th Cir. 1978) (where the court adopts the above three factors in a list of five factors).

In cases involving an allegedly false representation by means of the use of a credit card, two conflicting views have emerged as to what constitutes a "false representation" sufficient to fulfill the first prong of the above test. The older view embodied within the Fifth Circuit's holding in *Davison-Paxton v. Caldwell,* 115 F.2d 189 (5th Cir. 1940), *cert. denied,* 313 U.S. 564, 61 S.Ct. 841, 85 L.Ed. 1523 (1941), would require the creditor to prove an actual, overt false pretense or representation by the debtor. Proof of a mere concealment of debtor's poor financial condition to infer a "false representation" by debtor was deemed insufficient. 115 F.2d 191–92. *Accord, In re Newberry,* 1 B.C.D. 419 (Bkrtcy.S.D.Ala. 1974).

The *Davison-Paxton* approach has been described by subsequent decisions in the Fifth Circuit as having been subject to criticism. *See In re Wood,* 571 F.2d 284, 285 (5th Cir.1978); *In re Boydston,* 520 F.2d 1098, 1101 (5th Cir.1975). In addition, bankruptcy courts have repudiated this approach. *See, e.g., In re Schnore,* 13 B.R. at 253; *In re Poteet,* 12 B.R. 565, 568 (N.D. Tex.1981). *See generally* 3 Collier on Bankruptcy ¶ 523.08 n. 20 (15th ed. 1982). In fact, one bankruptcy court has declared that *Davison-Paxton* is no longer good law in the Fifth Circuit. *See In re Quintana,* 4 B.R. 508, 510, 2 C.B.C.2d 293, 295, 6 B.C.D. 464, 465 (Bkrtcy.S.D.Fla.1980).

The more modern view, which was first set forth in the dissent in *Davison-Paxton,* would allow a court to infer that the debtor made a "false representation" in presenting a credit card as payment while he or she knew or should have known that he or she was insolvent and had no ability to repay the debt. Courts espousing this approach have reasoned that the presentment by an insolvent debtor of a credit card constitutes an implied representation of the debtor's intent and ability to repay the debt incurred. *See, e.g., In re Boydston,* 520 F.2d 1098; *In re Black,* 373 F.Supp. 105, 107 (E.D.Wis.1974); *In re Ciavarelli,* 16 B.R. at 370; *In re Schnore,* 13 B.R. at 253–54; *In re Vegh,* 14 B.R. at 346–47 (S.D.Fla.1981); *In re Banasiak,* 8 B.R. at 174; *In re Ratajczak,* 5 B.R. at 586. *See also* 3 Collier on Bankruptcy ¶ 523.08 nn. 19 and 20 (15th ed. 1982).

In satisfying the second prong of the dischargeability test in a credit card case, courts have generally applied this more modern approach and have held that a creditor may infer the debtor's intent to deceive where the debtor knew or should have known of her insolvency and inability to repay the charges incurred. *See, e.g., In re*

*Schnore,* 13 B.R. at 254–57; *In re Ratajc-zak,* 5 B.R. at 586; *In re Banasiak,* 8 B.R. at 174. *But see In re Brashears,* 12 B.R. 136 (Bkrtcy.S.D.Miss.1981).

Recognizing that misconceived optimism is not uncommon to the financially distressed, this Court, in accord with other bankruptcy courts, will examine the following factors in determining whether an intent to deceive may be inferred:

1.  the age and sophistication of the debtor;

2.  length of time between the incurrence of the charging and the filing of bankruptcy;

3.  whether the debtor consulted an attorney regarding filing a bankruptcy petition before the charges were made;

4.  the number of charges made;

5.  the amount of each charge;

6.  the financial condition of the debtor at the time the charges were made;

7.  whether the charges exceeded the credit limit of the account;

*See In re Ciavarelli,* 16 B.R. at 370–71; *In re Schnore,* 13 B.R. at 256; *In re Stewart,* 7 B.R. 551, 555 (Bkrtcy.M.D.Ga.1980); *In re Kell,* 6 B.R. at 699, 6 B.C.D. at 1195 (Bkrtcy.D.Colo.1980). In addition, at least one court has also considered whether the debtor purchased luxury items or necessaries. *See In re Brashears,* 12 B.R. 136.

Along these lines, courts have held that the debtor's mere surpassing of the credit card limit is only one factor to be considered and without further proof by the creditor that debtor intended to obtain property without paying for it, the debt will be discharged. *See, e.g., In re Lyon,* 8 B.R. 152, 3 C.B.C.2d 644, [1978–1981 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 67,750 (Bkrtcy.D.Me.1981), where the court found no intent to deceive although the debtors had exceeded their credit limit because the debtors believed they were only required to make the "minimum payment" due on the credit card each month. *See also In re*

*Wright,* 8 B.R. 625, 628 (Bkrtcy.S.D.Ohio 1981) (exceeding credit card limit not *ipso facto* intent to defraud); *In re Parker,* 1 B.R. 176, 179, 5 B.C.D. 1035, 1037 (Bkrtcy.E.D.Tenn.1979) (exceeding credit card limit in itself is not sufficient to sustain nondischargeability); *Accord, In re Victorian,* 8 B.R. 196, 198 (Bkrtcy.N.D.Ohio 1981).

In applying these legal standards to the instant facts, MHT has not sustained its burden to provide clear and convincing proof of Mrs. Buford's having made any false representation with intent to deceive. No clear and convincing evidence of actual fraud and no evidence from which fraud can be inferred has been offered by MHT whose case in chief is built upon a construction of activity gleaned from its own monthly statements. No evidence of other debts incurred by the debtor during the same time period as she incurred the instant debts to MHT was submitted. Moreover, the evidence that was submitted by MHT demonstrates that she made consistent payments on her charge cards up to the time she filed her bankruptcy petition. *See* Transcript at 21, 34–36, 51–52, Trial Exhibits 2 and 3. Also, no proof was submitted that the debtor continued to use her credit cards after she consulted an attorney regarding filing a bankruptcy petition. In any event, the import of post-bankruptcy consultation would be limited to the specific purchases involved.

Moreover, the record demonstrates that the debtor did not embark upon an impermissible shopping spree involving multiple purchases over a short period of time immediately prior to filing for bankruptcy. On the contrary, all of debtor's purchases are routinely spaced out over a nine-month period with no flurry of activity immediately prior to her bankruptcy. *See* Plaintiff's Exhibit 2. For cases describing what constitutes an impermissible spree, see *In re Boydston,* 520 F.2d 1098; *In re Black,* 373 F.Supp. 105. This case also does not involve an inordinate number of small purchases below the call-in authorization

amount [8] immediately prior to filing the Petition or consulting an attorney. *See e.g., In re Poteet*, 12 B.R. 565 [9]; *In re D'Amico*, 1 B.R. 170 (Bkrtcy.W.D.N.Y.1979). In both of these types of spree cases, discharges were denied because an intent not to repay was inferred from the clear and convincing evidence submitted and it was proven that debtor fraudulently induced the extension of credit. *Id. See also In re Engstrom*, [1970–1973 Transfer Binder] Bankr.L.Rep. (CCH) ¶ 64,716 (elements of fraud and deceit proved by clear and convincing evidence where debtor made, among other things credit card purchases below the call-in authorization amount shortly before bankruptcy).

Nor is this a case evincing punitive recklessness on the part of the debtor as *In re Victorian*, 8 B.R. 196, where the debtor acted in bad faith in recklessly allowing a third party to use her credit card. On the contrary, Mrs. Buford offered evidence at trial that she was in good faith in making payments on her credit cards each month, albeit not the entire amount she owed. *See* Transcript at 20–21 [10], but enough to satisfy her creditor.

Given the indulgent billing practices discussed *supra* at pages 2–3, it is not unreasonable that debtor continued to use her credit cards to incur new debt while she had a substantial outstanding balance. All that was required of her was to cure a past due status by making a small and technically noncompliant monthly payment. Indeed, it was totally within MHT's capacity, as a sophisticated lender to control the account or to cancel her credit privileges in accordance with its attested policy at any time it believed she was not honoring her obligations, i.e. if she was consistently more than 60 days past due. At no time whatsoever, however, did MHT seek to revoke the debtor's credit cards or curtail her use of them pending restoration of the account to a current status. [11]

IV. *Conclusion*

MHT has failed to carry its burden of clear and convincing proof under 11 U.S.C.

**8.** "Call-in authorization" is the term signifying the authorization required by a credit card company of a merchant when a purchase exceeds a set limit.

**9.** It should be noted that the Court in *Poteet* did discharge those debts which the creditor had not proven were a part of debtor's spree.

**10.** A distinction may also be drawn between the instant facts and the facts presented in *United Bank of Denver v. Kell*, 6 B.R. 695 (Bkrtcy.D.Colo.1980), a case which plaintiff relies on in its brief. *Kell* involved a debtor who returned a credit card due to his inability to pay his obligations incurred thereon. Two weeks later, debtor made application to the bank for credit omitting his current obligations. Debtor then filed a petition in bankruptcy. After he filed the petition, the bank issued the debtor a new Mastercard and Visa card which he used while insolvent. The Court, *id.* at 699, held that it was clear that the debtor had full knowledge of his precarious financial position and that he was hopelessly insolvent when he entered into the agreement with the bank. The court thereby denied dischargeability of the debt by inferring debtor's intent not to repay, which the Court held was "inherent in the continued use of the credit cards". *Id.* No such facts exist in Mrs. Buford's situation and plaintiff has placed unjustifiable reliance on the *Kell* case.

**11.** The case at bar is similar to *In re Lyon*, 8 B.R. 152, 3 C.B.C.2d 644, where the debtors exceeded their credit line on a Visa card while insolvent. The Court in *Lyon* found that those debtors had not been fully aware of their precarious financial posture. In finding the debt dischargeable, the Court in *Lyon* declared that although the debtors had exercised poor judgment in using their credit, it was unable to find that this course of action constituted fraud. The Lyons had operated under the erroneous notion that their credit card obligations merely required that they make the minimum payment due listed on their Visa bill each month. The Court thus stated that the evidence of bad faith "falls far short of the clear and convincing evidence required to establish that *at the time of the purchases* the Debtors did not intend to pay for them or that they were so hopelessly insolvent that they knew or should have known that they would be unable to pay." 8 B.R. at 155, 3 C.B.C.2d at 648. (citations omitted).

Similarly, the evidence submitted herein shows that the debtor was not fully aware of her precarious financial position and that she consistently made some payments on her charge cards. Thus, the quantum of evidence submitted by MHT concerning the alleged bad faith of debtor is not "clear and convincing".

**484**

Section 523(a)(2)(A). It has not sustained its burden of proving that debtor had an actual intent to deceive. Nor has it established that debtor intentionally misled or made any false representations to her creditors because she knew or should have known that she was hopelessly insolvent at the time the charges were incurred. The MHT's claim of the debtor's fraudulent misrepresentation with intent to deceive this creditor cannot be upheld. It is therefore ordered that the claims of MHT be discharged in bankruptcy.

IT IS SO ORDERED.