In re Walter Eugene JOHNSON a/k/a Wally Johnson and Mary Lou Johnson, Debtors.

ASSOCIATED DRY GOODS COMPANY, d/b/a Powers Department Stores, Plaintiff,

v.

Walter Eugene JOHNSON a/k/a Wally Johnson and Mary Lou Johnson, Defendants.

Bankruptcy No. 4–83–567.
Adv. No. 4–83–290.

United States Bankruptcy Court, D. Minnesota.

June 4, 1984.

Charles Nauen, Opperman & Paquin, Minneapolis, Minn., for plaintiff.

Michael D. McCollum of Michael D. McCollum & Associates, Minneapolis, Minn., for debtors/defendants.

## ORDER

MARGARET A. MAHONEY, Bankruptcy Judge.

A trial was held before the undersigned on May 22, 1984, on the complaint of Associated Dry Goods Co. d/b/a Powers Department Stores (Associated) seeking a determination under 11 U.S.C. § 523(a)(2)(A) of nondischargeability of a specific debt owed Associated by the debtors. Based on the evidence presented at the trial and the briefs and arguments of counsel, the Court finds the following:

### Facts

1. The debtors had two Powers Department Stores charge accounts at the time their joint bankruptcy petition was filed March 31, 1983. Account No. 472–933–65 was opened in June of 1977 in the names of Walter and Mary Lou Johnson (the joint account) and Account No. 473–397–99 was opened in January 1980 in the name of Mary Lou Johnson (the "flexible" account).

2. The balance owing on the joint account at the time the bankruptcy petition was filed was $1,302.37 and the balance in the flexible account was $2,105.14. The balance owing on each account was the highest balance owing since the accounts were opened.

3. The balance owing on the joint account was $235.30 on November 16, 1983. It increased steadily until bankruptcy was filed. The balance of the other account was zero until the credit period beginning January 17, 1983. In the period beginning that date and ending February 16, 1983, $316.94 of charges were made and no payment tendered. In the finance period from February 17, 1983 to March 16, 1983, $1,783.98 of charges and $4.22 of finance charges were accumulated and no payment tendered, leaving the $2,105.14 balance as of the date of the bankruptcy petition.

4. The majority of the balance in the flexible account consisted of two purchases. The first, made on January 22, 1983, was of an oriental-style throw rug in the amount of $316.94. The second, on February 23, 1983, in the amount of $1,783.98 was also the purchase of an oriental-style throw rug. An oriental-style throw rug was also purchased on the joint account on February 26, 1983 in the amount of $82.68.

5. The debtors do not dispute the validity of the credit purchases or that they charged the amounts in question. The rugs purchased are currently in the home of the debtors.

6. Mary Lou Johnson was never employed during the course of the debtors' marriage. Walter Johnson was unemployed from late in 1981 until sometime after the bankruptcy petition was filed in March of 1983. Both were unemployed when the relevant credit purchases were made.

7. The debtors' only regular income in 1982 was $177 weekly in unemployment benefits. Other income consisted of the proceeds of a second mortgage of their homestead, granted in early 1982 in the amount of $13,000 and a $3,000 loan obtained from Mr. Johnson's mother in late 1983. These funds were used by the debtors for ordinary living expenses.

8. The debtors had only one checking account, which at all relevant times contained funds insufficient to cover the credit purchases made at Powers. The debtors were aware of this shortfall.

9. The debtors were seriously in arrears on several credit accounts at the time the purchases were made, including Amoco Gas, Mastercharge, Jackson Graves, and Sears. The debtors' American Express card was cancelled January 19, 1983 for lack of payment.

10. The debtors relied primarily on the hope of Mr. Johnson gaining employment shortly after the purchases were made to pay off the purchases. The only job prospect available at the time was an $18,000 per year position with the Dade County, Florida Police Department. In deposition, Mr. Johnson stated he felt all he had to do was drive to Florida and apply for the job to be hired. A letter from the Dade County Police dated March 25, 1983 reveals Mr. Johnson was merely being considered for a position with that office rather than having a position guaranteed for him.

## Discussion

11 U.S.C. § 523 provides certain exceptions to discharge of debts owed by the bankrupt debtor. Section 523(a)(2)(A) provides:

"Exceptions to discharge:

(a) A discharge under this Section 727, 1141, or 1328(b) of this title does not discharge an individual debtor from any debt ...

(2) For obtaining money, property, services or an extension, renewal of refinance of credit by

(A) False pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition, ..."

■ To establish non-dischargeability under this section, the creditor must prove by clear and convincing evidence that the debtor obtained property by representations which the debtor knew were false or which were made with reckless disregard of their truthfulness, which were made

with intent to deceive, and upon which the creditor reasonably relied. *In re Brink,* 27 B.R. 377 (B.C.W.D.Wis.1983); *In re Schnore,* 13 B.R. 249 (B.C.W.D.Wis.1981); *In re Buford,* 25 B.R. 477 (B.C.S.D.N.Y. 1982).

■ A purchaser of goods on credit impliedly represents to his supplier that the buyer has both the intent and the ability to pay for his credit purchases. *In re Lay,* 29 B.R. 258 (B.C.M.D.Fla.1983). Anyone who purchases on credit and knows or should know that he is unable to meet the credit obligations obtains those goods through false pretenses and fraud and the debt incurred through the credit extension is nondischargeable. *Brink,* supra; *Buford,* supra.

### Representations

■ The debtors made implied representations of ability and intent to repay Associated upon the purchases of the oriental rugs from the Powers store. The implied representations of ability were that the debtors were solvent and had the wherewithall to pay the credit obligations as they became due. Those of intent were that the debtors would pay the obligations as they matured and did not plan to avoid their obligations to Associated. Those representations were false or at least were made with reckless disregard of the perilous financial state of the debtors. It is clear to me that the debtors had neither the intent nor the ability to repay Associated under the terms of the credit agreement entered into by the parties and that the debtors made implied representations of ability and intent to repay with reckless disregard of the truth.

This conclusion is reached through an analysis of several factors, chiefly:

1. The debtors never had sufficient funds on hand or in any banking account to pay the credit obligations. Nor were either of the debtors employed when the purchases were made, thus no wage income sufficient to cover the payments was forthcoming. This reflects inability to repay.

2. The unemployment benefits of Mr. Johnson had either expired or shortly would expire when the purchases were made. No satisfaction was to be made from those benefits and this further shows the debtors' inability to pay their obligations.

3. The debtors were over their credit limit on several other credit installment accounts and in fact had several other credit accounts closed on them either shortly before or soon after these purchases were made. A showing of nonpayment of other obligations evidences insolvency and inability to pay.

4. The purchases were of luxury items, not of necessities or staple goods. I find this important when coupled with the knowledge that the debtors retain the rugs in their home now, rather than having returned the rugs to Associated. This fact reflects lack of intent to meet the credit obligations. I find it difficult to believe that the debtors would pay this obligation, incurred for luxuries, before they would satisfy the other older and more basic credit obligations.

5. The highly speculative nature of the Florida employment is relevant. Mr. Johnson was apparently only under consideration for the position in Florida rather than having a position guaranteed as he stated in deposition. In addition, the $18,000 annual salary of that post would seem to indicate that it would be inadequate to satisfy the costs of moving to Florida, finding suitable housing, and paying all the debts of the debtors, thus indicating lack of ability to repay.

Some mention was made at the hearing about the debtors' substantial equity in their homestead and their practice in the past of selling the homestead to pay accumulated debts. However, such is not persuasive due to the fact that the house was listed only in early 1982, not at the time the purchases were made. Further, as counsel for Plaintiff pointed out at the hearing, it is doubtful that the debtors intended to sell the house to help pay for these rugs when the rugs were purchased to cover bare floor spots in that very house. It is important to note at this juncture that even if the Florida employment possibility and intent to sell the house were evidence of anything, they would be evidence solely of an intent to pay at some date in the future, not evidence of an intent or ability to pay the obligations as they become due.

Therefore, the first part of the dischargeability test has been met here—the debtors made false representations of ability and intent to repay or at least made representations in reckless disregard of their insolvent state and lack of intent to repay the obligations.

## INTENT TO DECEIVE

The second part of the test in credit card cases, the intent to deceive, has also been shown here. Intent can never be proved directly and must always be inferred. The *Buford* court used a list of factors to apply to an individual case from which to infer an intent to deceive.[1] I do not believe any list could be dispositive in the case of something so amorphous as intent to deceive, but I find several of the factors illuminating and relevant here. Particularly significant are the short period of time between the purchases and bankruptcy, the large dollar amount of the charges, the precarious financial condition of the debtors when the charges were made, and the luxury nature of the items purchased. I find an intent to deceive can be inferred from the presence of these factors along with the

1. The *Buford* test listed the following factors:
    1. the age and sophistication of the debtor;
    2. length of time between the incurrence of the charging and the filing of bankruptcy;
    3. whether the debtor consulted an attorney regarding filing a bankruptcy petition before the charges were made;
    4. the number of charges made;
    5. the amount of each charge;
    6. the financial condition of the debtor at the time the charges were made;
    7. whether the charges exceeded the credit limit of the account;
    8. In addition, at least one court has also considered whether the debtor purchased luxury items or necessities.

points delineated in the earlier discussion of the representations.

### Reliance

Reasonable reliance by Associated has also been shown. Associated was not in a position to know of the debtors' financial condition outside this debtor-creditor relationship. Further, up to the time these purchases were made, the debtors were not over the credit limit that had been established for their account. In fact, these purchases increased the debtors' credit limit. This is not the case of continually over-reaching an established credit limit, but a case of a few large purchases of luxury items made shortly before bankruptcy was filed. Therefore, reliance by Associated on the debtors' implied representations was reasonable.

### Amount of Nondischargeable Debt

Thus, all the factors for a determination of nondischargeability under 11 U.S.C. § 523(a)(2)(A) have been established here and the debts owed plaintiff are nondischargeable at least in part. The next determination is that of what debt exactly is to be held nondischargeable.

At trial, plaintiff orally circumscribed its complaint to seek nondischargeability solely of the purchases of the oriental rugs on the flexible account. Those two purchases, of $316.94 on January 22 and $1,783.98 on February 23 total $2,100.92. That figure is the total amount of the debt to be held nondischargeable. The remainder of the debt owing to Associated is to be discharged.

### ORDER FOR JUDGMENT

THEREFORE, IT IS HEREBY ORDERED that the debt owing plaintiff by defendants/debtors is hereby discharged, except to the extent of $2,100.92 which represents the value of the two oriental throw rugs purchased in January and February of 1983. The $2,100.92 shall not be discharged by the bankruptcy discharge granted these debtors.