In re Osborne Norfleet
McLELLAN, Jr., Debtor.

MERRILL LYNCH, PIERCE FENNER
& SMITH, INC., Plaintiff,

v.

Osborne Norfleet McLELLAN,
Jr., Defendant.

Bankruptcy No. 84–02176–BKC–TCB.
Adv. No. 85–0181–BKC–TCB–A.

United States Bankruptcy Court,
S.D. Florida.

April 24, 1985.

O'Bannon M. Cook, Miami, Fla., for plaintiff.

George C. Vogelsang, Miami, Fla., for debtor/defendant.

Robert Roth, Miami, Fla., Trustee.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Bankruptcy Judge.

The debtor's former employer seeks exception from discharge under 11 U.S.C. § 523(a)(2)(A) for its claim in the amount of $88,733. The debtor has answered and the matter was tried on March 21.

Although the record is voluminous, the facts are almost completely undisputed and relatively simple. The debtor was employed by the plaintiff brokerage firm as an account executive on January 1, 1981. He was discharged seven months later. During that brief interval, he managed to become indebted to his employer upon his own personal trading account in the amount of $63,008. With interest that debt forms the basis for plaintiff's present claim. It is plaintiff's contention that the debt is for credit obtained by:

"false pretenses, a false representation, or actual fraud"

and, therefore, should be excepted from discharge in bankruptcy under the provision cited above.

Specifically, plaintiff charges that (a) the debtor manipulated his personal trading account by kiting checks in April and May, 1981 to fraudulently obtain credit of over $230,000 for a period of several months, (b) the debtor took advantage of an erroneous entry in his account in April 1981 to use over $100,000 of erroneous credit, and (c) in July 1981 the debtor obtained almost $800,-000 credit in his account by selling some stock which he owned short at a time when he knew he couldn't possibly cover his short position within the five trading days he was permitted. The record before me supports these allegations and I am satisfied that the debtor deliberately took advantage of his special knowledge and position with an actual intent to obtain and use the substantial credit he received in a deliberate gamble that he could make enough money to square his account. Unfortunately, he attempted to do so through aggressive dealing in puts and calls, a particularly dangerous market for the underfinanced and unsophisticated investor. He lost heavily.

When his employer learned what was going on, the account was liquidated in August 1981 and reflected a net debit of $63,008. The debtor was persuaded to sign a note in that amount payable with 10% interest over a period of about 8 years. The note acknowledges that it is in repayment for "improper transactions".

After paying about $2,000, the debtor defaulted and was sued by his employer in 1983. That action resulted in a judgment entered in August 1984 for $81,298. The judgment was based upon a stipulation which acknowledged the debt upon the note in that amount. The note was the basis for the first count in the lawsuit. The stipulation and the judgment both provide that the remaining six counts in the complaint were "dismissed with prejudice."

Counts 2 and 3 were for the same debt upon an account stated and upon an oral contract to pay the debt. Count 4 charged fraudulent deception through giving the note with no actual intent to pay the note. Count 5 was for the same debt, alleging the check kiting which is alleged now and which has been summarized above. Count 6 was for treble damages under *Fla.Stat.* § 812.014 and § 812.035(7), which provide a civil remedy for theft. Neither the complaint alluded to by the settlement and judgment nor any other part of the State court record makes any reference to the remaining two specific types of fraudulent conduct identified by plaintiff in the action before me.

The debtor has pleaded res judicata, accord and satisfaction and collateral estoppel arising from the State court stipulation and judgment.

 It is settled beyond dispute that a prior State court judgment which did not result in a finding of fraud is not res judicata, barring relitigation of the nature of the debt, so as to bar a creditor from offering additional evidence in seeking exception from discharge in bankruptcy. *Brown v. Felsen*, 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1979). In that case, the Supreme Court noted that it was not required to and, therefore, did not decide whether collateral-estoppel effect should be given to a prior State judgment so as to bar the relitigation of those questions actually and necessarily decided in the prior suit. At p. 139, n. 10, 99 S.Ct. at p. 2213, n. 10. The doctrine of collateral estoppel has since been recognized as applicable in this context. *Miller v. Held* (In re Held), 734 F.2d 628 (11th Cir.1984). I have no difficulty in agreeing with the debtor that the dismissal with prejudice of Count 5 by the State court stipulated judgment precludes the plaintiff from again litigating its charge that the debtor kited checks with a fraudulent intent to obtain credit from the plaintiff. *Interdynamics, Inc. v. Firma Wolf*, 653 F.2d 93, 96–97 (3rd Cir.1981); *Kaspar WireWorks, Inc. v. Leco Engineering & Machine, Inc.*, 575 F.2d 530, 534, 540 (5th Cir.1978). To that extent, plaintiff's action here is barred by collateral estoppel.

The debtor has argued that the stipulation for judgment and the judgment in the

State court were intended to constitute an accord and satisfaction for all claims for any improper transaction by the debtor in connection with his personal trading account. There is no question that the plaintiff's allegations in the State court were made in contemplation of the debtor's possible bankruptcy. T. 87. However, plaintiff denies any intention to abandon generally its right to oppose the discharge of its claim, explaining that it merely wished to avoid the expense of litigation with the debtor at that time.

■ It is the burden of the debtor to prove that the stipulation and judgment constituted a release of plaintiff's right to oppose the discharge of this claim on grounds other than those specifically dismissed with prejudice. I find that the debtor has not carried this burden. The settlement stipulation was prepared by debtor's counsel. It could have, but did not do more than dismiss with prejudice the counts alleged against the debtor. The debtor surrendered little when he consented to judgment on his unpaid promissory note. He received adequate consideration in plaintiff's abandonment of its statutory treble-damages claim.

■ I conclude that plaintiff is not barred from offering additional evidence in this court to show that its claim is for credit fraudulently obtained when the debtor deliberately took advantage of his employer's erroneous entry in his account on April 16, 1981. The plaintiff has done so. On that day, the debtor wrote a check on his account for $102,000 which was erroneously debited by his employer as only $102. The debtor was aware of this error and used it to cover his reckless trading with the conscious knowledge that he had no right to do so. I find that he obtained this credit by actual fraud and that the fraud proximately caused the debt owed to the plaintiff which is the subject of this action.

■ Similarly, plaintiff is not precluded from offering additional evidence here to show that the debtor had an actual intent to defraud the plaintiff when he sold short on July 23, 1981 5,000 shares of Teledyne stock, obtaining a credit of almost $800,-000. The debtor admits he knew he had only five business days to produce 5,000 shares of that stock or repay the money and that the only way he could do so would be if the stock fell 24 points in those five days. This would have represented a 15% movement in the market of this stock. I find that the debtor was then acting in sheer desperation and had no real expectation that he could repay the money he had obtained by this fraudulent manipulation of this account. His conduct here directly contributed to plaintiff's claim which I, therefore, find to be for an extension of credit obtained by actual fraud.

As is required by B.R. 9021(a), a separate judgment will be entered excepting from discharge under § 523(a)(2)(A) plaintiff's claim which was reduced to judgment in the State court on September 18, 1984, in the present amount of $88,733. Plaintiff's costs may be taxed on motion.