In re Michael J. REILLY, Debtor(s).

SHEARSON LEHMAN/AMERICAN EXPRESS, Plaintiff(s),

v.

Michael J. REILLY, Defendant(s).

Adv. No. 85–0217.

United States Bankruptcy Court,
D. Hawaii.

Nov. 17, 1986.

Michael C. Webb, Honolulu, Hawaii, for plaintiff.

Jonathan Jackson, Honolulu, Hawaii, for defendant.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

JON J. CHINEN, Bankruptcy Judge.

On December 12, 1986, Shearson Lehman/American Express, Inc. ("Plaintiff") filed a Complaint praying that, pursuant to

Section 523(a)(2) and (4) of the Bankruptcy Code, the claim of Plaintiff against Michael J. Reilly ("Debtor") be deemed non-dischargeable. In response, Debtor contends that he had no intention to perpetuate any fraud or to breach any fiduciary duty. Debtor further contends that, because the Amended Stipulated Judgment and the Amended Judgment in the State Court Action, Civil No. 85–1224, did not mention any fraud or breach of fiduciary duty, the doctrines of collateral estoppel and res judicata bar Plaintiff in this action.

The adversary proceeding came on for trial before the undersigned Judge on August 27, 1986 at which hearing, Michael C. Webb, Esq. appeared on behalf of Plaintiff and Jonathan M. Jackson, Esq. appeared on behalf of Michael J. Reilly ("Debtor"). The court having heard the testimony of witnesses, having considered the documents received into evidence, and having heard the argument of counsel, enters the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1. Plaintiff is a Delaware corporation engaged in the securities business in the City and County of Honolulu, State of Hawaii. Debtor is a resident of said City and County of Honolulu.

2. Debtor entered the securities industry as a securities broker in 1978, when he began working for Merrill Lynch, Pierce, Fenner & Smith in said Honolulu.

3. From 1981 through March 1985 Debtor was a licensed securities broker employed by Plaintiff in Honolulu. Debtor had successfully completed examinations for and was licensed as a securities broker in 1979. In 1985, prior to the transactions at issue in this adversary proceeding, Debtor was licensed as a commodities broker and was authorized to conduct transactions involving commodities and commodities options.

4. In his capacity as an employee of Plaintiff, Debtor was the stockbroker for Gary D. Stice and Apolonia Stice (herein-

after collectively referred to as "Stice") and managed Stice's accounts.

5. On March 27, 1985 and March 28, 1985 without prior authorization, approval or knowledge of or from Stice, Debtor transferred $13,371.00 from Stice's security account to Stice's commodity account. Debtor then utilized the funds in Stice's commodity account to engage in commodities transactions, which resulted in losses of $8,343.78.

6. Debtor admitted in testimony before this court and Gary D. Stice testified before this court that Debtor's transfers and transactions in Stice's security and commodity accounts were unauthorized and done without Stice's knowledge or approval.

7. As a result of Debtor's actions, Plaintiff was required and did reimburse Stice for losses in the amount of $8,343.78.

8. On March 15, 1985, Debtor opened a personal commodity account with Plaintiff. Because. on several occasions, Debtor had experienced losses in his securities transactions and because Debtor had given personal checks to Plaintiff to reimburse Plaintiff for the losses, which checks failed to clear the bank when presented, Debtor was restricted in the use of his accounts. Robert Baker, Plaintiff's Vice-President and Manager of the Honolulu office, required Debtor to have the full cash amount of each transaction in his account prior to engaging in transactions.

9. Between March 15, 1985 and March 28, 1985, Debtor engaged in numerous transactions, some involving commodities valued at over $4,000,000.00, in his commodity account, which was a margin account, and Debtor experienced losses totalling $23,120.50, which Plaintiff was required to pay.

10. Plaintiff's transactions in his commodity account violated the restrictions imposed on his transactions by Robert Baker, in that Debtor made the transactions without funds in his account.

11. On or about March 27, 1985, Plaintiff notified Debtor that it was necessary

for him to pay $9,200.00 in order to maintain his minimum margin requirements in his account. Debtor met the margin call by submitting to Plaintiff a $9,200.00 check drawn on his personal checking account at the Bank of Honolulu. When Debtor submitted the $9,200.00 check to Plaintiff, Debtor did not have sufficient funds in the account to cover the check and Debtor had no expectation that he would have funds to place in the account to cover the check.

12. In his testimony before this court, Debtor admitted that he opened the checking account at Bank of Honolulu because Bank of Honolulu took approximately three to four days to clear checks, and he could benefit from the "float".

13. In order to affect the transactions in his commodity account, Debtor used telephone orders, which placed him in direct contact with brokers on the floors of various exchanges, instead of using wire orders, which was the customary way to place orders.

14. Debtor's total losses, through Stice's account and Debtor's personal account, totaled $31,464.28, all of which was borne by Plaintiff, either in the form of reimbursing Stice or in the form of direct losses through Debtor's personal account.

15. As a result of Debtor's transactions, Plaintiff lost $2,160.22 in commissions.

16. After Debtor admitted the various transactions, Plaintiff terminated Debtor with cause on March 29, 1985.

17. In an Amended Stipulated Judgment entered in the Circuit Court of the First Circuit, Civil No. 85–1224, Debtor admitted and acknowledged his indebtedness to Plaintiff in the amount of $33,624.50, and Debtor assured Plaintiff that he would repay the indebtedness.

## CONCLUSIONS OF LAW

1. The question of dischargeability is a "core proceeding" as defined in 28 U.S.C. Section 157(b)(2)(I); thus this court has jurisdiction over the subject matter and the parties of the above-entitled adversary proceeding. And venue in this court is proper.

2. Although the Stipulated Judgment and Amended Stipulated Judgment entered in Civil No. 85–1224, Circuit Court of the First Circuit, State of Hawaii, did not expressly state that they were entered as a result of Debtor's false pretense, a false representation, fraud or defalcation while acting in a fiduciary capacity, Plaintiff is allowed to introduce evidence to prove that Debtor incurred the indebtedness through such action in the Bankruptcy Court to bar discharge of the indebtedness, pursuant to Bankruptcy Code § 523(a)(2) or (4), and Plaintiff is not barred by the doctrine of res judicata or collateral estoppel from putting on such proof.

3. The issue of *res judicata* and collateral estoppel was resolved by the United Supreme Court in *Brown v. Felsen,* 442 U.S. 127, 99 S.Ct. 2205, 60 L.Ed.2d 767 (1978), which was a case almost on point with this case. In *Brown v. Felsen,* the plaintiff and defendant settled a state court collection suit by stipulated judgment against the debtor. The stipulated judgment did not allege fraud or misrepresentation. Shortly after the stipulated judgment was entered, the debtor filed bankruptcy, and the creditor sought to bar discharge of the debt because the debt was based on the debtor's fraud, deceit and malicious conversion. The debtor defended against the creditor's claim by alleging that the state court proceeding did not establish that the debtor had committed fraud, and that res judicata barred the creditor from attempting to prove in the bankruptcy court that the debt was based on fraud, misrepresentation, deceit and malicious conversion. The bankruptcy court granted summary judgment in favor of the debtor, and the summary judgment was affirmed by both the district court and the Circuit Court of Appeals. The United States Supreme Court reversed, holding that the bankruptcy court was not confined to review only the stipulated judgment and record in the prior state court proceeding when determining the dischargeability of the debt. The Court held that, when the debtor asserted the new defense of bankruptcy, the

doctrine of res judicata did not bar the creditor from offering additional evidence to meet that defense. The Court further held that a contrary rule would force federal bankruptcy issues to be adjudicated prematurely in state court cases. The Court further stated:

By seeking discharge, however, respondent placed the rectitude of his prior dealings squarely in issue, for, as the Court has noted, the Act limits that opportunity to the "honest but unfortunate debtor".

*Brown v. Felsen*, 442 U.S. at 128, 99 S.Ct. at 2208.

The Court continued, stating:

Refusing to apply res judicata here would permit the bankruptcy court to make an accurate determination whether respondent in fact committed the deceit, fraud and malicious conversion which petitioner alleges. These questions are now, for the first time, squarely in issue. They are the type of question Congress intended that the bankruptcy court would resolve. That court can weight all the evidence, and it can also take into account whether or not petitioner's failure to press these allegations at an earlier time betrays a weakness in his case on the merits.

*Brown v. Felsen*, 442 U.S. at 138, 99 S.Ct. at 2212. The Court summarized its holding, stating:

In sum, we reject respondent's contention that res judicata applies here, and we hold that the Bankruptcy Court is not confined to a review of the judgment and record in the prior state court proceedings when considering the dischargeability of respondent's debt.

*Brown v. Felsen*, 442 U.S. at 138–139, 99 S.Ct. at 2213.

4. Though *Brown v. Felsen* deals with an Act case, it is still the law and is applicable to all Code cases. The court finds that the doctrine of res judicata and collateral estoppel are not applicable here.

5. 11 U.S.C. § 523(a)(4) provides:

(a) A discharge under § 727 ... of this title does not discharge an individual debtor from any debt—

....

(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny; ....

6. To establish that a debt falls within § 523(a)(4) exception to dischargeability, a creditor must prove (1) that the debtor was acting in a fiduciary capacity, and (2) that the debt was created by the debtor's fraud or defalcation, or that there was embezzlement or larceny..

7. Debtor was an employee of Plaintiff entrusted with certain responsibilities. Among such responsibilities was to act as a stockholder for Stice, to have a personal commodity account with Plaintiff and to use Plaintiff's facilities to place orders with brokers on the floors of various exchanges.

8. As a licensed securities broker and commodities broker, Debtor's actions were controlled by the General Regulations under the Commodity Exchange Act ("Regs"). Section 166.2 of the Regs states:

No futures commission merchant, introducing broker or any of their associated persons may directly or indirectly effect a transaction in a commodity interest for the account of any customer unless before the transaction the customer, or person designated by the customer to control the account—

(a) Specifically authorizes the futures commission merchant, introducing broker or any of their associated persons to affect the transaction (a transaction is "specifically authorized" if the customer or person designated by the customer to control the account specifies (1) the precises (sic) commodity interest to be purchased or sold) the exact amount of the commodity interest to be purchased or sold); or

(b) Authorized in writing the futures commission merchant, introducing broker or any other associated persons to effect transactions and commodity interest for the account without the customer's specific authorization.

9. Embezzlement is the fraudulent appropriation of property by a person to whom such property has been entrusted. Larceny is the fraudulent and wrongful taking and carrying away the property of another with intent to convert such property to his use without the consent of the owner. Colliers on Bankruptcy, Volume 3, 523.14(3) (15th Ed.)

10. Debtor was aware that he was not authorized to transfer any amount from Stice's security account to Stice's commodities account without Stice's prior consent. Debtor was also aware of or should have been aware of Section 166.2 of the Regulation which provided that a broker will not effect transactions of Commodity interest for a client's account without the client's authorization.

11. However, Debtor engaged in the above transactions without Stice's prior authorization, with the intent to use the funds in Stice's commodities account for his own purpose and without the means to reimburse Stice's account.

12. Such conduct of Debtor resulted in losses of $8,343.78, which amount Plaintiff was required and did reimburse Stice.

13. In addition, Debtor knew that he was not to engage in transactions in his personal account without first having the full cash amount of each transaction contemplated. However, he did engage in such transaction, knowing that he had no means to cover the full transaction and knowing that Plaintiff would be responsible for any loss. Because Debtor defied the restrictions imposed by Plaintiff, Plaintiff's loss totaled $31,464.28. In addition, as a result of Debtor's transactions, Plaintiff lost $2,160.22 in commission. In the Amended Stipulated Judgment, Debtor acknowledged his debt to Plaintiff in the sum of $33,624.50.

14. Based on the foregoing, the Court finds that the sum of $33,624.50 owed by Debtor to Plaintiff is nondischargeable under Section 523(a)(4) of the Bankruptcy Code.

15. Because the court has found Debtor's debt to Plaintiff nondischargeable under Section 523(a)(4), the court finds it unnecessary to discuss the other section referred to by Plaintiff.

An Order will be signed upon presentment.