**In re Richard SCHULMAN, Debtor.**

**SHEARSON LEHMAN HUTTON, INC., Plaintiff,**

v.

**Richard SCHULMAN, Defendant.**

**Bankruptcy No. 90 B 11794 (TLB). Adv. No. 90–6349A.**

United States Bankruptcy Court, S.D. New York.

June 4, 1996.

The Law Offices of Mark J. Alonso, P.C. by Gil Santamarina, New York City, for Plaintiff.

## DECISION ON MOTION FOR DEFAULT JUDGMENT DECLARING DEBTS NONDISCHARGEABLE

TINA L. BROZMAN, Chief Judge.

Lehman Brothers, Inc. ("Shearson"), successor in interest to Shearson Lehman Hutton, Inc., sued Richard Schulman for a declaration that certain debts owed Shearson are nondischargeable pursuant to section 523(a)(2)(A) or (a)(4) of the Bankruptcy Code. 11 U.S.C. § 523(a)(2)(A) and (a)(4) (hereinafter title 11 of the United States Code will be called simply "the Bankruptcy Code"). Because Schulman failed to answer the amended complaint, he has admitted all well-pleaded factual allegations. Shearson now moves for judgment by default.

## I.

Richard Schulman, a registered stockbroker, was employed by the securities brokerage firm, E.F. Hutton & Company, a predecessor entity to Shearson [1] until his discharge in March 1987. He filed a chapter 7 petition

1. For the sake of simplicity, all corporate entities will be referred to collectively as "Shearson".

2. In the arbitration proceeding, Shearson pleaded four causes of action: breach of contract, mistake, account stated, and fraud. The arbitrators overseeing the dispute awarded Shearson $54,000, with interest from September 6, 1989. That award was confirmed by the New York State Supreme Court, New York County, in March 1990. Shortly thereafter, the debtor filed

on June 8, 1990. Two debts arising out of Schulman's employment by Shearson are said to be nondischargeable, the $70,000 deficit in his personal trading account and the $13,514.25 which Shearson paid out to him under its health insurance plan. These payments from Shearson comprise two types of insurance claims, fraudulent pharmaceutical charges and valid medical charges covered despite Schulman's failure to pay any insurance premiums.

The facts pleaded are essentially these. Prior to his termination, Schulman bought and sold stock options for his own account without having the money to pay for his trading. Pursuant to applicable securities regulations and/or the parties' own agreement, Shearson commenced an arbitration proceeding against Schulman during which Schulman admitted to trading without having the ability to pay.[2] It is claimed that Schulman made unidentified misrepresentations causing Shearson to permit Schulman to run up a deficit in his account. The theory of nondischargeability is grounded in section 523(a)(2)(A), with Shearson alleging that (a) Schulman knew he did not have the financial wherewithal to cover his losses (b) yet traded in excess of his ability to pay (c) having represented that he could pay (d) in order to mislead Shearson into allowing him to execute trades. The same facts are asserted to give rise to nondischargeability under section 523(a)(4) insofar as Schulman had a fiduciary duty to "know his customer" (himself) and refrain from executing trades that were beyond the customer's (his) ability to pay. Shearson argues that the duty to know one's customer is meant to protect not only the customer but the brokerage house as well because it is responsible for payment of securities it orders even if its customer does not pay.

for bankruptcy. The arbitrators did not state the particular grounds for their award. As I earlier determined, collateral estoppel does not apply. *Shearson Lehman Hutton, Inc. v. Schulman (In re Schulman)*, No. 90–6349A, slip op. 4 n. 3 (Bankr. S.D.N.Y. April 25, 1994). Notwithstanding the $70,000 plus deficit, Shearson demands only the $54,000 amount adjudged due by the arbitrators, plus interest from September 6, 1989.

The insurance fraud claim alleges that after he was terminated, Schulman began submitting falsified pharmaceutical receipts from Love Pharmacy to Shearson for reimbursement.[3] Schulman also submitted claims for other medical expenses even though he failed to pay the premiums and, in Shearson's view, was therefore not entitled to coverage. Shearson charges that such receipt of coverage (even though Shearson did not terminate his insurance for nonpayment) was tantamount to fraud and thus nondischargeable under section 523(a)(2)(A) because (a) Schulman purposely represented to Shearson that he would pay the premiums (b) in order to defraud Shearson into providing him with coverage, and (c) by extending coverage Shearson relied on Schulman's representations that he would pay the premiums and submit only valid claims.

## II.

■ Federal Rule of Civil Procedure 55(b)(2), made applicable to this adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7055, permits the court to enter a default judgment against a defendant who has failed to answer a properly served complaint. When a defendant fails to answer, the first step leading to a default judgment is the entry of default with the clerk of the court. Fed.R.Civ.P. 55(a); *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90 (2d Cir.1993); *Fleet Factors Corp. v. Roth (In re Roth)*, 172 B.R. 777 (Bankr.S.D.N.Y.1994). It appears that Shearson has failed to obtain an entry of default as contemplated by the rule. This failure would provide grounds for denial of the motion. *See id.* However, both plaintiff's counsel and counsel for the debtor (before he withdrew with court permission) notified Schulman of the necessity and urgency to answer the amended complaint. I am satisfied that the defendant has had ample notice of the filing of the amended complaint and of the hearing on this motion for default. In light of the circumstances, I exercise my discretion to decide the motion on its merits. *See Meehan v. Snow*, 652 F.2d 274 (2d Cir.1981); 6 JAMES WM. MOORE,

MOORE'S FEDERAL PRACTICE § 55.03 at 55–18 to 55–19 & nn. 15, 17 (2d ed. 1995).

■ The debtor, now proceeding *pro se*, is in default; therefore all "well pleaded" allegations of the amended complaint are taken as true. 10 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2688 at 444 (2d ed. 1983 & Supp.1996). "However, necessary facts not contained in the pleadings, and claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of No. Am.*, 980 F.2d 1261, 1267 (9th Cir.1992); *see Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir.1981); *Wagstaff-El v. Carlton Press Co.*, 913 F.2d 56, 57–58 (2d Cir.1990), *cert. denied*, 499 U.S. 929, 111 S.Ct. 1332, 113 L.Ed.2d 263 (1991); *Owens v. Layton*, No 3:94 Civ. 1033, 1995 WL 803822 (N.D.Ind. Dec. 8, 1995) (granting motion to set aside default judgment and *sua sponte* dismissing complaint for failure to state a claim upon which relief may be granted).

■ On a motion for a default judgment on a claim of fraud, the inquiry is similar to one on a motion to dismiss. The court need only ascertain whether the facts asserted in the pleadings are sufficiently particularized to raise an inference of fraudulent intent sufficient to support a finding that the debt was procured by fraud. *See Bush v. FDIC*, 1993 WL 262591 (10th Cir. July 8, 1993); *Citibank v. Davis (In re Davis)*, 176 B.R. 118, 121 (Bankr.W.D.N.Y.1994). The pleadings include the complaint, the exhibits annexed to the complaint, or documents incorporated into the complaint by reference. *Goldman v. Belden*, 754 F.2d 1059, 1065–66 (2d Cir.1985); *Mian v. Donaldson, Lufkin & Jenrette Securities Corp.*, No. 92 Civ. 3917, 1994 WL 494902 (S.D.N.Y. Sept. 9, 1994) (refusing to consider the factual allegations asserted in affidavits which were separate and apart from the complaint in denying plaintiff's motion for default judgment and dismissing the complaint with prejudice), *aff'd*, 60 F.3d 810 (2d Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 88, 133 L.Ed.2d 45

---

3. Schulman actually submitted the claims to AETNA, Shearson's claim processing agent, but Shearson was self-insured. *Shearson Lehman*

*Hutton, Inc. v. Schulman (In re Schulman)*, No. 90–6349A, slip op. 7 (Bankr.S.D.N.Y. April 25, 1994).

(1995). If the viable complaint alleges claims for an amount certain or an amount that can be made certain by computation, the court may enter judgment for that amount without any further hearing. 10 WRIGHT, MILLER, & KANE, *supra*, §§ 2686 at 429–431, 2688 at 448.

 This complaint deals solely with dischargeability. The basic policy behind the discharge provisions of the Bankruptcy Code is to "relieve the honest debtor from the weight of oppressive indebtedness and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." *In re Buford*, 25 B.R. 477, 480 (Bankr.S.D.N.Y.1982) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934)). In light of that goal, exceptions to discharge are to be literally and strictly construed against the objecting creditor and liberally in favor of the debtor. *Gleason v. Thaw*, 236 U.S. 558, 562, 35 S.Ct. 287, 289, 59 L.Ed. 717 (1915); *Household Finance Corp. v. Danns (In re Danns)*, 558 F.2d 114, 116 (2d Cir.1977); *Smith v. Meyers (In re Schwartz & Meyers)*, 130 B.R. 416 (Bankr.S.D.N.Y.1991).

With that legal landscape sketched in, we move to the particular claims asserted.

## A. § 523(a)(2)(A)

 Section 523(a)(2)(A) of the Bankruptcy Code provides that a debt is excepted from discharge if it was obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." The debtor must be guilty of positive fraud or fraud in fact, involving moral turpitude or intentional wrong, and not implied fraud or fraud in law which may exist without the imputation of bad faith or immorality. *Neal v. Clark*, 95 U.S. 704, 709, 24 L.Ed. 586 (1877); *In re Schwartz & Meyers*, 130 B.R. at 422 (citations omitted). There are five elements a creditor must establish to prevail under this section of the Code:

(1) the debtor made a representation;

(2) the debtor knew the representation was false at the time he made it;

(3) the debtor made the representation with the intent to deceive a creditor;

(4) the creditor relied on the representation; and

(5) the creditor was injured by the representation and suffered damages as a result.

*In re Schwartz & Meyers*, 130 B.R. at 422 (citations omitted); *see Field v. Mans*, ─── U.S. ───, ─── ── ───, 116 S.Ct. 437, 442–43, 133 L.Ed.2d 351 (1995) (requiring "justifiable reliance").

Shearson's claims under section 523(a)(2)(A) sound in fraud—a knowing misrepresentation made with the intent to deceive. But Federal Rule of Civil Procedure 9(b), which applies to this adversary proceeding through Federal Rule of Bankruptcy Procedure 7009, requires fraud be pleaded with particularity, although malice, intent, knowledge, and other condition of the mind of a person may be averred generally. The particularity requirements are predicated on the serious nature of fraud and the danger of "strike suits." *See Pereira v. Centel Corp. (In re Argo Communications Corp.)*, 134 B.R. 776, 792 (Bankr.S.D.N.Y.1991).

 To allege the "circumstances" of fraud with particularity as required by the rule, a complaint must contain (1) specific facts; (2) sources that support the alleged facts; and (3) a basis from which an inference of fraud may fairly be drawn. *Avnet, Inc. v. American Motorists Ins. Co.*, 115 F.R.D. 588, 590–91 (S.D.N.Y.1987); *see Decker v. Massey–Ferguson, Ltd.*, 681 F.2d 111, 119 (2d Cir.1982) ("circumstances sufficient to warrant the pleaded conclusion that fraud has occurred"); *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 50 (2d Cir. 1987), *cert. denied*, 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). The Second Circuit in *Decker* determined that the plaintiff "obviously" failed to state a claim where the complaint alleged only "generalities and conclusions" to the effect that the defendant's reports presented a "a false, misleading, and inflated picture of assets, earnings, and business." *Decker*, 681 F.2d at 115. Scienter can be pleaded by alleging facts showing a motive and a clear opportunity for committing fraud and these can be established by identifying circumstances indicating

conscious behavior by the defendant. *Deva-ney v. Chester,* 813 F.2d 566, 568 (2d Cir. 1987). There is some suggestion in an affidavit submitted in support of the motion for a default judgment that Schulman engaged in securities fraud, specifically, "free-riding."[4] Free-riding is chargeable under the anti-fraud provisions of § 17(a) of the 1933 Securities Act, 15 U.S.C. § 77q(a) and under Rule 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. 78j(b); Rule 10b–5, 17 C.F.R. § 240.10b–5. But even in the securities fraud context, the statements constituting the alleged fraud must be specified. *Boley v. Pineloch Assocs, Ltd.,* 700 F.Supp. 673, 678 (S.D.N.Y.1988) (where complaint alleges that brokers made fraudulent oral representations concerning the financial benefits and gains to be derived from investment, complaint is insufficient in law because it "totally fail[s] to satisfy the requirement of Rule 9(b)"); *Establissement Tomis v. Shearson Hayden Stone, Inc.,* No. 76 Civ. 5675, 1980 WL 1367, *2 (S.D.N.Y. Jan. 24, 1980) (quoting *Segal v. Gordon,* 467 F.2d 602 (2d Cir. 1972)); *Establissement Tomis v. Shearson Hayden Stone, Inc.,* 459 F.Supp. 1355, 1363 (S.D.N.Y.1978). Thus, no matter the route taken to establish the fraud, Shearson must have pleaded sufficient facts to satisfy Rule 9(b).

## 1. *The Insurance Claims*

### a. The Pharmaceutical Receipts

 The complaint alleges that Schulman submitted falsified receipts from Love's Pharmacy, at 1296 Second Avenue, New York, New York. (Amended Compl. ¶ 17 at 3.). The unrefuted allegation of falsification coupled with the other circumstances is sufficient to raise an inference of fraudulent intent and to state a claim for nondischargeable fraud under § 523(A)(2)(A). *See Decker,* 681 F.2d 111; *Avnet,* 115 F.R.D. 588. Shearson is entitled to judgment on this claim.

### b. Medical Insurance Coverage

 The nondischargeability claim arising out of Schulman's fraudulent receipt of benefits under Shearson's health insurance plan on account of presumably valid expenses[5] suffers a different fate. It is alleged that Schulman represented that he would pay his premiums when he applied for insurance and that he knew this representation to be false when made.[6] Why I should infer that Schulman's implied statement was a misrepresentation is not stated. No facts are asserted to substantiate a claim that Schulman fraudulently induced Shearson to provide him with coverage.[7] *See Decker,* 681 F.2d at 111. Nor does Shearson allege that it ever canceled Schulman's coverage for his failure to pay. At most Shearson has established that Schulman breached his contract, but damages arising from breach of contract constitute dischargeable debt.

## 2. *The Options Trading*

 Shearson pleads that Schulman knew he could not personally afford to buy

---

**4.** "Free-riding" involves the purchasing of stocks without funds to pay for them and the use of the proceeds of the sale of the same stocks to cover the purchase price. *SEC v. Margolin,* No. 92 Civ. 6307, 1992 WL 279735, *2 (S.D.N.Y. Sept. 30, 1992).

**5.** Shearson does not allege that these receipts were forged or invalid in and of themselves.

**6.** Whereas the original complaint alleged that immediately upon Schulman's termination his health insurance coverage with Shearson expired, the amended complaint explains that "under Federal Law (COBRA), Schulman was eligible to continue his health insurance plan with Shearson, the successor in interest to E.F. Hutton." (Amended Compl. ¶ 10 at 2). Further, the amended complaint acknowledges that "Schulman applied and was accepted into Shearson's

health insurance plan under COBRA." (Amended Compl. ¶ 13 at 2).

**7.** In support of the motion for default judgment, Shearson submits a sworn affidavit of one Thomas Hommel, the Senior Vice President of Shearson. Hommel attests that Schulman submitted claim forms for medical expenses incurred by Schulman in or about April 1988 through August 1988, more than a year after his employment with Lehman Brothers has ceased. (Hommel Aff., Notice of Mot. for Default at 3). This affidavit was neither annexed nor referred to in the amended complaint (nor were the facts attested to pleaded) and therefore I will not consider it. *Mian,* 1994 WL 494902, at *2–3; *B.V. Optische Industrie de Oude Delft v. Hologic, Inc.,* 909 F.Supp. 162, 169–70 (S.D.N.Y.1995); *Nishimatsu Constr. Co. Ltd. v. Houston Nat'l Bank,* 515 F.2d 1200, 1206 (5th Cir.1975).

and sell risky stock options but did so anyway at Shearson's expense. No specific misrepresentation is pleaded. Reading the complaint liberally in Shearson's favor, there was an implied representation that Schulman could pay. However, even assuming, without deciding, that this implied representation is sufficient to support nondischargeability, Shearson's complaint must still raise an inference from the surrounding circumstances that Schulman intended to defraud Shearson. *See Decker,* 681 F.2d at 115; *Seepes v. Schwartz (In re Schwartz),* 45 B.R. 354, 357 (Bankr.S.D.N.Y.1985).[8]

■■ Under the Bankruptcy Code, present inability to pay does not alone establish fraudulent intent. *Chase Manhattan Bank v. Murphy (In re Murphy),* 190 B.R. 327, 332 n. 6 (Bankr.N.D.Ill.1995). Whereas intent may be inferred, it may not be presumed. *Schwalbe v. Gans (In re Gans),* 75 B.R. 474, 485 (Bankr.S.D.N.Y.1987). Shearson contends that Schulman's trading debt ought be declared nondischargeable because in March 1987 Schulman, a registered securities broker who knew the risks associated with trading options, executed a "large number of trades" in the risky options even though he knew he could not afford them. (Amended Compl. ¶¶ 34, 35, 38 at 4–5). Shearson argues that because stock option trading is so speculative and volatile, Schulman's trading on margin is tantamount to fraud. (Pl's Memorandum of Law at 7). However, by failing to plead any particular facts which would give rise to an inference of fraudulent intent, Shearson has insufficiently pleaded the circumstances constituting fraud under § 523(a)(2)(A). *See DiVittorio v. Equidyne Extractive Indus.,* 822 F.2d 1242, 1247 (2d Cir.1987). This complaint gives no detail which would allow one to conclude that at some particular point in time Schulman's fortune changed such that he must have intended to defraud Shearson when he executed trades on margin from and after that date. Indeed, the complaint does not identify when Schulman's trading began and whether it was profitable or unprofitable, nor how the eventual losses accrued.[9] *See In re Gans,* 75 B.R.

---

8. Compare, for example, the consumer credit card cases where this type of implied fraud is sometimes found sufficient to raise the spectre of fraudulent intent. In those cases, the debtor goes on a buying spree on the eve of bankruptcy. That the debtor runs up debt on a credit card does not lead inevitably to denial of discharge of the debt, however. Rather, to determine whether the debt was fraudulently incurred, the court will examine (1) the length of time between the incurrence of debt and the bankruptcy filing; (2) whether or not an attorney has been consulted concerning the bankruptcy filing before the debt was incurred; (3) the number of charges made; (4) the amount of the debt; (5) the financial condition of the debtor at the time the debt was incurred; (6) whether the charges were above the credit limit on the account; (7) whether the debtor made multiple charges on the same day; (8) whether or not the debtor was employed; (9) the debtor's prospects for employment; (10) the financial sophistication of the debtor; (11) whether there was a sudden change in the debtor's buying habits; (12) whether the purchases were made for luxuries or necessities. *See Colonial Nat'l Bank v. Leventhal (In re Leventhal),* 194 B.R. 26, 29–30 (Bankr.S.D.N.Y.1996); *see also In re Buford,* 25 B.R. 477 (Bankr.S.D.N.Y.1982). The analogy to the credit card cases serves only to underscore the need for particulars in assessing whether an implied representation may form the basis for fraud. *See Manufacturers Hanover Trust Co. v. Pannell (In re Pannell),* 27 B.R. 298, 302 (Bankr.E.D.N.Y.1983). And here, those particulars are lacking.

9. Shearson asserts in a memorandum of law that Schulman sustained "tremendous losses in the risky options market in 1988–89," and that notwithstanding such losses, "continued to gamble in the options market, with full knowledge that he would be unable to pay for any of these transactions, even if they resulted in a profitable return. Schulman's reckless trading in the volatile options market resulted in a debit balance in the Schulman account by February 29, 1989 of $78,323.71." These facts, if contained in the pleadings, may have given rise to an inference that Schulman executed such trades while "hopelessly insolvent," sufficient to raise the spectre of fraudulent intent. *See Bache Halsey Stuart Shields Inc. v. Greenwald (In re Greenwald),* 2 B.R. 35 (Bankr.S.D.Fla.1979); *In re Gans,* 75 B.R. at 484 (requiring inference of "hopeless insolvency"). (Of course, the issue of justifiable reliance would still be one for the court, based on the totality of the circumstances.)

It bears noting that though Schulman may have intended to defraud Shearson some 13 months later—after he was terminated—that does not lead me to infer that Schulman intended to defraud Shearson in accumulating a deficit in his account. No allegation suggestive of conscious behavior by the defendant at the relevant time is alleged. *See Ex. "C,"* James S. Kenton, Affidavit in Opp'n to Debtor's Motion to Dismiss (Schulman submitted his first falsified pharmaceutical receipt on April 1, 1988).

at 484 (requiring inference of "hopeless insolvency").

Were I asked to conclude whether a present inability to pay coupled with a knowing violation of a securities law raises a sufficient inference of fraud to state a claim under § 523(a)(2)(A), I might have been more inclined to find the debt nondischargeable than under the pleading as filed. However, that is not my inquiry for Shearson has not alleged a violation of any specific securities law and has not adequately pleaded the elements of a claim under any that I identified as possibly applicable. *See, e.g.,* 15 U.S.C. § 78j(a) (no allegation that Schulman traded in stocks listed on a national exchange); 15 U.S.C. § 78j(b), Rule 10b–5, 17 C.F.R. § 240.10b–5(a) and (c) (no pleading with the required particularity); 17 C.F.R. § 240.10b–5(b) (no allegation of material misstatement or omission of material fact); 15 U.S.C. § 77q(a) (no pleading with the requisite particularity). In any event, Shearson has failed to plead the circumstances surrounding the alleged fraud with sufficient particularity to raise an inference that Schulman intended to defraud Shearson.

I also note that Shearson has failed to allege a single misrepresentation from which I may infer that Shearson's extension of credit was justified. *Cf. Merrill Lynch, Pierce Fenner & Smith, Inc. v. McLellan (In re McLellan),* 49 B.R. 740 (Bankr.S.D.Fla. 1985) (actual fraud found where creditor extended credit after debtor manipulated his personal trading account by "kiting" checks and improperly using erroneous entries in his account); *Shearson Lehman/American Express v. Reilly (In re Reilly),* 68 B.R. 545 (Bankr.D.Haw.1986) (actual fraud found where broker breached fiduciary duty by impermissibly trading with customer funds for personal benefit); *Bache Halsey Stuart Shields Inc. v. Greenwald (In re Greenwald),* 2 B.R. 35 (Bankr.S.D.Fla.1979) (faced with a debtor who created the option-trading debt with the intent to declare bankruptcy and have the debt discharged, the court declared the losses nondischargeable); *cf. Huntington Nat'l Bank v. Schwartzman (In re Schwartzman),* 63 B.R. 348, 355 (Bankr.S.D.Ohio 1986) (mere allegation that creditor relied on

a representation is insufficient particularized pleading under Rule 9(b)); FED.R.CIV.P. 9(f) ("For the purposes of testing the sufficiently of a pleading, averments of time and place are material and shall be considered like all other averments of material matter."); *Connecticut Nat'l Bank v. Fluor Corp.,* 808 F.2d 957, 962 (2d Cir.1987); *Quantum Overseas, N.V. v. Touche Ross & Co.,* 663 F.Supp. 658, 668 (S.D.N.Y.1987); *Goldberg Securities v. Scarlata (In re Scarlata),* 979 F.2d 521, 523 (7th Cir.1992) ($4 million option trading deficit held dischargeable despite debtor's violation of the "haircut requirement" imposing obligation on debtor to have funds in his account to cover potential loses, because creditor alleged no circumstances from which reliance could be based).

Because the amended complaint does not state a claim upon which relief may be granted, Shearson is not entitled to a default judgment arising out of Schulman's option trading for his own account.

**B. § 523(a)(4)**

*Fiduciary Fraud or Defalcation*

■ Shearson's third cause of action alleges that Schulman's securities trading debt is nondischargeable pursuant to section 523(a)(4) of the Bankruptcy Code, which provides in pertinent part that:

(a) a discharge under § 727 ... of this title does not discharge an individual debtor from any debt ... for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

In order for the deficit balance in Schulman's account to be nondischargeable under subsection (a)(4), Shearson must show that: (1) Schulman was acting in a fiduciary capacity at the time he incurred the deficit in his personal trading account and (2) Schulman committed either fraud or defalcation in such capacity. *See Kuper v. Spar (In re Spar),* 176 B.R. 321, 329 (Bankr.S.D.N.Y.1994).

■ Whether the debtor was acting in a fiduciary capacity, a concept which is narrowly construed, is a question of federal law. *In re Gans,* 75 B.R. at 489 (citations omitted); 3 L. KING, COLLIER ON BANKRUPTCY ¶ 523.14[1][c] at 523–91 (15th ed. 1996) (citing

*Johnson v. Woldman,* 158 B.R. 992, 996 (N.D.Ill.1993)). For the defendant to be held to be acting in a fiduciary capacity under section 523(a)(4) there are two requirements, that there be a trust *res* and that the debtor be a trustee. *See Tillman v. Mason (In re Mason),* 191 B.R. 50 (Bankr.S.D.N.Y.1996); *Armstrong Rubber Co. v. Anzman (In re Anzman),* 73 B.R. 156, 166 (Bankr.D.Colo. 1986). In other words, a fiduciary in the dischargeability context refers only to "express and technical trusts" and does not extend to implied trusts which are imposed as a matter of equity. *In re Spar,* 176 B.R. at 329; *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 333, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934); *In re Stone,* 94 B.R. 298, 300, 302 (S.D.N.Y.1988) (the debtor must serve as technical trustee prior to and independent of the debt), *aff'd,* 880 F.2d 1318 (2d Cir.1989); *Bennett v. LSP Inv. Partnership,* —— U.S. ——, 114 S.Ct. 601, 126 L.Ed.2d 566 (1993) (stating that "[w]ithin the meaning of the exception in the bankruptcy act, a debt is not created by a person while acting in a 'fiduciary character,' merely because it is created under circumstances in which trust or confidence is reposed in the debtor, in the popular sense of those terms.") [10]; *Chapman v. Forsyth,* 43 U.S. (2 How.) 202, 11 L.Ed. 236 (1844); *Neal v. Clark,* 95 U.S. 704, 24 L.Ed. 586 (1877); *Hennequin v. Clews,* 111 U.S. 676, 4 S.Ct. 576, 28 L.Ed. 565 (1884); *Noble v. Hammond,* 129 U.S. 65, 9 S.Ct. 235, 32 L.Ed. 621 (1889); *Upshur v. Briscoe,* 138 U.S. 365, 375, 11 S.Ct. 313, 316–17, 34 L.Ed. 931 (1891) (discharging a debt owed by an individual expressly designated as "trustee" because "[t]he relation created was merely the usual one of contract between debtor and creditor"); *accord In re Turner,* 134 B.R.

646, 652 (Bankr.N.D.Okla.1991); *In re Vickers,* 577 F.2d 683 (10th Cir.1978) (discharging bank customer who was also bank director).

 Although the concept of fiduciary is to be narrowly defined as a matter of federal law, state law may be consulted to determine whether a trust in the strict sense exists. *In re Anzman,* 73 B.R. 156 at 166 (statute must contain "sufficient words to create a trust, a definite subject, a certain object or res, with intent to create a trust relationship); *In re Mason,* 191 B.R. 50 (dismissing complaint under § 523(a)(4) after finding no trust res); *In re Waskew,* 191 B.R. 34 (Bankr.S.D.N.Y. 1995) (New York Lien law art. 3–A, § 71–a(2)(a) created an express trust in favor of a vendee of real property pursuant to a contract of sale and provided that deposits shall constitute assets of a trust; therefore, court declared the trust-related debt nondischargeable); *Ragsdale v. Haller,* 780 F.2d 794, 796–97 (9th Cir.1986) (finding that because California statute made partners trustees over the assets of the partnership, the obligations imposed more than just a fiduciary relationship created in response to some wrongdoing).

 Courts have also recognized that the "technical or express trust" requirement is not limited to trusts that arise by virtue of a formal trust agreement or a statute imposing an express trust, but includes relationships in which "technical trust type" obligations are imposed pursuant to statute or common law. *See In re Bennett,* 989 F.2d 779, 784 (5th Cir.) (managing partner owed fiduciary duty within meaning of § 523(a)(4) to copartners because the duty of a partner in control of a business is analogous to that of a trustee),

---

**10.** The cases which interpret the former Bankruptcy Act § 17(a)(4) are still good authority on the issue of the fiduciary capacity nondischargeable debt now embodied in § 523(a)(4). 3 L. KING, COLLIER ON BANKRUPTCY ¶ 528.08[4] at 523–46 n. 11, ¶ 523.14[1][c] at 523–91 n. 8 (15th ed. 1996). The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific. *Midlantic Nat'l Bank v. New Jersey Dep't of Environmental Protection,* 474 U.S. 494, 501, 106 S.Ct. 755, 759–60, 88 L.Ed.2d 859 (1986). This rule is followed with particular care in construing the Bankruptcy Code. *In re Bonner Mall Partner-*

*ship,* 2 F.3d 899, 912 (9th Cir.1993). The Bankruptcy Code should not be read to abandon past bankruptcy practice absent a clear indication that Congress intended to do so. *Pennsylvania Public Welfare Dep't v. Davenport,* 495 U.S. 552, 563, 110 S.Ct. 2126, 2133, 109 L.Ed.2d 588 (1990). Thus, where the text of the Bankruptcy Code does not unambiguously abrogate pre-Code practice, courts should presume Congress intended it to continue unless the legislative history dictates a contrary result. *Dewsnup v. Timm,* 502 U.S. 410, 418–20, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992). Here, the legislative history dictates no such result. *See In re Gans,* 75 B.R. at 482, 488; *In re Mason,* 191 B.R. at 54 n. 2.

*cert. denied,* —— U.S. ——, 114 S.Ct. 601, 126 L.Ed.2d 566 (1993); *In re Stone,* 94 B.R. 298, 302 (S.D.N.Y.1988) (same), *aff'd,* 880 F.2d 1318 (2d Cir.1989); *Smith v. M & M Commodities, Inc. (In re Smith),* 72 B.R. 61, 62 (N.D.Iowa 1987) (an express trust was created by the Commodity Exchange Act, 7 U.S.C. §§ 1–26, and the regulations promulgated thereunder, because these laws specifically prohibited brokers from "discretionary trading" with a customer's investment fund); *In re Kane,* 48 F.2d 96 (2d Cir.1931) (debtor-attorney's conversion of client's money is fiduciary fraud); *Moreno v. Ashworth,* 892 F.2d 417, 421 (5th Cir.1990) (officer in control of corporation owed fiduciary duty to corporation and stockholders because the debtor/officer had entered into self-dealing transactions while a controlling officer); *In re Burgess,* 106 B.R. 612, 620 (Bankr.D.Neb. 1989) (debtor with a durable power of attorney held fiduciary relationship to owner of assets); *Schneider v. Davis,* 99 B.R. 974 (9th Cir. BAP 1989) (debtor financial advisor in fiduciary relationship to client whose funds debtor converted). Absent an express trust, the existence of the requisite fiduciary duty depends upon the facts of the particular relationship; a mere commercial relationship is not one rife with fiduciary obligation—what is key is the intent to create a trust relationship rather than a contractual one. *In re Gans,* 75 B.R. 474, 489 (Bankr.S.D.N.Y.1987).

In an attempt to establish a fiduciary relationship, Shearson points to New York Stock Exchange Rule 405, commonly referred to as the "know your customer" rule," which provides:

Every member organization is required . . . to

(1) Use due diligence to learn the essential facts relative to every such organization and every customer's every order, every cash or margin account accepted or carried by such organization and every person holding power of attorney over any account accepted or carried by such organization.

Supervision of Accounts

(2) Supervise diligently all accounts handled by registered representatives of the organization.

The NASDAQ counterpart, Article III, section 2, provides:

In recommending to a customer the purchase, sale or exchange of any security, a member shall have reasonable grounds for believing that the recommendation is suitable for such customer upon the basis of the facts, if any, disclosed by such customer as to his other security holdings and as to his financial situation and needs.

It is not at all clear whether there lies a private right of action under either rule. *See Komanoff v. Mabon, Nugent & Co.,* 884 F.Supp. 848, 859–60 (S.D.N.Y.1995) (citing cases); *Jaksich v. Thomson McKinnon Securities, Inc.,* 582 F.Supp. 485 (S.D.N.Y.1984) (no private right of action for violation of the stock exchange rules); *but cf. Siedman v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 465 F.Supp. 1233, 1236 (S.D.N.Y.1979) (broker's violations of New York Stock Exchange Rules can be remedied by state law actions for breach of contract and negligence). In any event, the rule is not a statute which imposes an express trust in favor of the brokerage firm. Therefore, Shearson must allege at least some other factor from which I could conclude that Schulman held assets in a technical trust capacity for Shearson within the meaning of section 523(a)(4).

The mere allegation that Schulman was Shearson's employee is insufficient to establish the requisite fiduciary duty under the statute. *See Community Mutual Sav. Bank v. Landrin (In re Landrin),* 173 B.R. 307 (Bankr.S.D.N.Y.1994) (despite contention that relationship between bank and debtor was one of express trust, for nondischargeability purposes, no such trust was found solely on traditional employee-employer relationship). In *Kansas State Bank & Trust Co. v. Vickers (In re Vickers),* the Tenth Circuit concluded that because no circumstances were alleged which would lead the court to conclude that the bank's and the debtor's dealings were any different from those of any other customer or that the debtor's position as a director of the bank was considered when credit was allowed, the

bank failed to state a cause of action for fiduciary fraud. 577 F.2d 683, 687 (10th Cir.1978); *see also BPS Guard Servs. Inc. v. Myrick (In re Myrick)*, 172 B.R. 633, 636–37 (Bankr.D.Neb.1994); *Air Traffic Conference v. Paley (In re Paley)*, 8 B.R. 466 (Bankr. E.D.N.Y.1981) (existence of principal-agent relationship does not in and of itself create necessary fiduciary relationship for nondischargeability purposes). Having failed to establish the existence of a fiduciary relationship, Shearson is not entitled to a default judgment on its third cause of action.

### CONCLUSION

Shearson's motion for a default judgment is granted in part and denied in part. Insofar as prejudgment interest is requested, that is a matter for the court's sound discretion. *Payne v. Brace (In re Brace)*, 131 B.R. 612, 614 (Bankr.W.D.Mich.1991). The arbitrators' award did not grant prejudgment interest; I will therefore limit the prejudgment interest here to the period commencing with the issuance of the arbitrators' award. The request for an attorney's fee is denied. *See Members Credit Union v. Kellar (In re Kellar)*, 125 B.R. 716, 719 (Bankr.N.D.N.Y. 1989).

The only remaining issue is whether I ought dismiss those claims on which I am denying judgment. *See Kleartex; Sears, Roebuck & Co. v. Goycochea (In re Goycochea)*, 192 B.R. 847 (Bankr.D.Md.1996). Earlier in this proceeding, the debtor had moved for summary judgment and to dismiss the original complaint for failure to state a claim upon which relief may be granted. By written decision dated April 25, 1994, I granted the debtor's motion in part, the muddled complaint failing to allege the elements of fraud, and, in addition, to plead the fraud with particularity. I stated:

> With respect to Shearson's other claim for relief, that the debtor defrauded Shearson when he borrowed its funds to engage in trading for his own account, Shearson predicates its claim for relief on section 523(a)(2) of the Bankruptcy Code, which provides in pertinent part:
>
> [a] discharge ... does not discharge an individual debtor from any debt ... for money, property, services, or an extension, renewal, or reference of credit, to the extent obtained by—*false pretenses, a false representation,* or *actual fraud,* other than a statement respecting the debtor's or an insider's financial condition. 11 U.S.C. § 523(a)(2)(A) (emphasis added).

On a motion to dismiss under Federal Rule of Civil Procedure Rule 12(b)(6), the issue is not whether the plaintiff will ultimately prevail on the merits but whether he ought be allowed to offer evidence to support his claims. . . .

Nowhere in the complaint is there a specification of what constituted the fraudulent conduct. The sole relevant allegation is that the losses in Schulman's account "involved a breach of fiduciary duty by Schulman, a registered stockbroker, in that Schulman violated various provisions of Federal Securities Law in connection with the trading and supervision of said account." Compl. at ¶ 11. Similarly, none of the other elements of fraud is pleaded. In addition, there is a failure to plead fraud with particularity. *See In re Rand*, 144 B.R. 253, 258 (Bankr.S.D.N.Y.1992). Were section 523(a)(2) the only subsection of section 523 available to Shearson on the facts pleaded, I would agree right now with the debtor that the complaint fails to state a claim for relief with regard to this debt. However, section 523(a)(4) also excepts from discharge any debt "for fraud or defalcation while acting in a fiduciary capacity." The complaint does not mention subsection 523(a)(4) explicitly, but appears to invoke it *sub silentio* by referring to Schulman's alleged fiduciary relationship (a relationship which Schulman disputes). However, the failure to allege the elements of fraud and to plead the fraud with particularity are fatal to a claim under this subsection of the statute as well. *See Sculler v. Rosen (In re Rosen)*, 151 B.R. 648, 656 (Bankr.E.D.N.Y.1993). It may be that the failures with respect to this claim are curable. Accordingly, I am granting the motion to dismiss this claim for relief with leave to replead.

*Shearson Lehman Hutton, Inc. v. Schulman,* No. 90–6349A, slip op. 9 (Bankr.S.D.N.Y. April 25, 1994). I granted Shearson twenty days' leave to replead, which opportunity it seized. When it repleaded, it added an additional claim, that Schulman defrauded Shearson into paying valid insurance claims. Shearson was plainly on notice of what was required. Moreover, this bankruptcy case (and adversary proceeding) having been commenced some six years ago, Schulman is entitled to know at last what debts survive his discharge. Accordingly, those portions of the complaint that do not entitle Shearson to judgment are dismissed with prejudice.

SETTLE ORDER consistent with this decision.